| ¡.GUIDRY, J.
Donnie Eunelle Bozeman (appellant), appeals the judgment of the trial court which classified the autopsy reports prepared by Dr. Keith Mack (appellee), the coroner of Livingston Parish as medical records. We reverse and remand.
FACTS
Appellant is the mother of the late Bree Gomez Hull and the grandmother of the late Cassandra Brielle Hull, both of whom perished in a 1996 car accident which occurred in Livingston Parish. Appellant verbally requested that the appellee, Dr. Keith Mack, the Livingston Parish Coroner, provide copies of the autopsy reports prepared for both decedents. When this request was met with a fee of $200.00 per report, appellant sent a written request, via certified mail, for the autopsy reports, offering payment of a reasonable copying charge. Appellee refused appellant’s request on the grounds that an autopsy report is the last medical record of a deceased person, which is also an expert medical report, which has an attached fee.
PROCEDURAL HISTORY
On June 5, 1996, appellant filed a petition for mandamus, pursuant to the Public Records Act, directing the appellee to produce the two autopsy reports in question. On September 12, 1996, appellee answered this request stating that the full autopsy report is the last medical report of the deceased and not a public record. On September 16, 1996, after a bench conference, appellant’s attorney was ordered to prepare an affidavit of death and heirship to determine the proper parties to sign the medical release to be submitted to appel-lee’s office. At such time, appellee’s office would release the records, pursuant to the Medical Records Act. The court reserved ruling on the classification of the autopsy report as a medical or public record. On February 24, 1997, the trial court rendered an ^opinion in favor of appellee, stating that autopsy reports prepared by appellee are medical records and not public records. On April 9, 1997, the trial court rendered a written judgment denying appellant’s petition for mandamus. From that judgment, plaintiff devolutively appeals.
ASSIGNMENT OF ERRORS
1. The trial court erred in ruling that the release of the autopsy reports must be preceded by providing the office of the *36 Coroner with an Affidavit of Death and Heirship;
2. The trial court erred in ruling that the certified letter requesting the autopsy-reports was an insufficient “medical authorization”, if such an authorization was required;
3. The trial court erred in ruling that the autopsy reports requested were not “public records”;
4. The trial court erred in ruling that the autopsy reports requested were “medical records”;
5. The trial court erred in failing to order Keith R. Mack, Coroner, to deliver the autopsy reports to the plaintiff for a reasonable copying charge;
6. The trail court erred in ordering plaintiff to pay to Keith R. Mack, Coroner, “reasonable attorney fees ... in accordance with and pursuant to LSA-R.S. 44:35 E(2)”;
7. The trial court erred in failing to order Keith R. Mack, Coroner, to pay reasonable attorney’s fees and penalties to the plaintiff for the failure to produce the autopsy reports as requested.
DISCUSSION

Classification of an autopsy report

Appellant challenges the trial court’s conclusion that an autopsy report is a private and sensitive medical record unless it is converted to a public record via subsequent action.[2] Appellant and appellee, rely on the provisions of LSA-R.S. | ¿40:1299.96 and LSA-R.S. 13:3715.1, respectively, in support of their countering positions on whether autopsy reports should be classified as a public record or the last private medical record of a deceased person. These provisions apply to health care providers and records produced within hospitals or health care facilities. As such, we find both provisions inapplicable to the matter at hand.
We note that the autopsy report sought in this instance was produced by appellee, in his official capacity as coroner and paid for by the Parish of Livingston, an entity of the State of Louisiana. These facts trigger application of the Louisiana Public Records Law which mandates that records of public bodies be made available upon request. The Public Records Law must be liberally interpreted to enlarge rather than restrict the public’s access to public records. Denoux v. Bertel, 96-0833, p. 4 (La.App. 4th Cir.10/09/96), 682 So.2d 300, 301, writ denied, 96-2703 (La.1/10/97), 685 So.2d 144. Any doubt concerning the public’s right of access to certain records must be resolved in favor of the public’s right to see. Title Research Corporation v. Rausch, 450 So.2d 933, 936 (La.1984).
LSA-R.S. 44:1 provides the scope of the Louisiana public records law. This provision encompasses the following definition of a “public body”:
A. (1) As used in this Chapter, the phrase “public body” means any branch, department, office, agency, board, commission, district, governing authority, political subdivision, or any committee, subcommittee, advisory board, or task force thereof, or any other instrumentality of state, parish, or municipal government, including a public or quasi-public nonprofit corporation designated as an entity to perform a governmental or proprietary function. (Emphasis added).
*37 Clearly, the coroner’s office is a public body under this provision of law. In addition to the plain wording of the statute, there is a basis in our jurisprudence to | Rhold that a coroner’s office is a “public body”.[3] Because the coroner’s office is a “public body” whose existence is mandated by the Louisiana State Constitution,[4] the records produced therein are public records under the provisions of LSA-R.S. 44:1, unless they are specifically exempted from the public records law. LSA-R.S. 44:1(A)(2) legislatively defines a public record as follows:
(2) All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are “public records,” except as otherwise provided in this Chapter or as otherwise specifically provided by law. (Emphasis added).
We conclude that an autopsy report is a public record when it is prepared by a coroner in his public capacity as coroner. There is a great deal of authority in support of this conclusion.[5] Recently, the Supreme Court in the ease of Everett v. Southern Transplant Service, Inc., 97-2992 (La.2/20/98), 709 So.2d 764, reversed the decision of the Fourth Circuit Court of Appeal insofar as it vacated the |fitrial court which had ruled that the coroner’s records[6] were public records under the provisions of LSA-R.S. 44:1 et seq. and LSA-R.S. 33:1563. Therefore, we find that the trial court erred as a matter of law in finding that the autopsy reports requested by appellant were not public records.

Obtaining Public Records

Appellant verbally requested that the appellee, Livingston Parish coroner, provide copies of the autopsy reports for her deceased daughter and granddaughter. When this request was met with a fee of $200.00 per report, appellant sent a writ *38 ten request, via certified mail, for the autopsy reports, offering to pay a reasonable copying charge. Appellee takes the position that the request and the authorization given by appellant was insufficient for her to obtain copies of the autopsy report as medical records, pursuant to LSA-R.S. 40:1299.96 and LSA-R.S. 13:3715.1(E). Because we have determined that the records in question are public records, we must look to the provisions of the Louisiana Public Records Law rather than the statutory provisions cited by the appellee.
The right of access to public records is a fundamental right, guaranteed by the Constitution. La. Const, art. 12, Section 3. Any restriction or limitation imposed by the custodian places the burden on the custodian to justify the restriction or the limitation. Elliott v. District Attorney of Baton Rouge, 94-1804, pp. 3 and 7 (La.App. 1 Cir. 9/14/95), 664 So.2d 122, 124 and 126, unit denied, 95-2509 (La.12/15/95), 664 So.2d 440. It is the burden of the custodian of the public record to establish that the record in question is statutorily exempt from the provisions of the Louisiana Public Records law. Ap-pellee asserts, with great reliance on Op. Atty.Gen., No. 94-19, March 8, 1994, and Op.Atty.Gen., No. 94-071,7 June 27, 1994, that the autopsy report of the minor decedent, Cassandra Brielle Hull, constitutes one such exemption. Both opinions recognize such an exemption in instances when the death of a child under seven years old falls under the review of the child death review act. To be covered by the act, the child’s death must be an unexpected death. LSA-R.S. 40:2019(3) provides the following definition of “unexpected death”:
“Unexpected death” means a death which is a result of undiagnosed disease, or trauma in which the surrounding circumstances are suspicious, obscure, or otherwise unexplained, or other death the circumstances of which are suspicious, obscure, or otherwise unexplained. A clinical diagnosis of death due to Sudden Infant Death Syndrome (SIDS) shall be deemed an unexpected death.
A thorough review of the record does not convince this court that the appellee met his burden of showing that the autopsy report of the minor decedent, Cassandra Brielle Hull, is statutorily exempt under the child death review act or any other provision of state law.
Any person of the age of majority may inspect, copy or reproduce or obtain a reproduction of any public record. LSA-R.S. 44:31. Our jurisprudence has recognized that public records may be requested by mail or in person. Elliott, 94-1804 at p. 6, 664 So.2d at 125. The following portions of. LSA-R.S. 44:32 are relevant to our discussion of the appropriateness of the appellants request for public records upon payment of a reasonable copying charge and the appellee’s response.
A. The custodian shall present any public record to any person of the age of majority who so requests. The custodian shall make no inquiry of any person who applies for a public record, except an inquiry as to the age and identification of the person and may require the person to sign a register and shall not review, examine or scrutinize any copy, photograph, or memoranda in the possession of any such person; and shall extend to the person all reasonable comfort and facility for the full exercise of the right granted by this Chapter; provided that nothing herein contained shall prevent the custodian from maintaining such vigilance as is required | sto prevent alteration of any record while it is being examined; and provided further, that examinations of records under the authority of this Section must be conducted during regular office or working hours, unless the custodian shall authorize examination of records in other than regular office or working hours....
Hs H* sjs H* H*
C. (l)(a) For all public records, except public records of state agencies, it shall be the duty of the custodian of *39 such public records to provide copies to persons so requesting. The custodian may establish and collect reasonable fees for making copies of public records. Copies of records may be furnished without charge or at a reduced charge to indigent citizens of this state.
$ ‡ ‡
(d) Any such person of the age of majority, as provided for in R.S. 44:31, may request a copy or reproduction of any public record and it shall be the duty of the custodian to provide such copies to the person so requesting.
D. In any case in which a record is requested and a question is raised by the custodian of the record as to whether it is a public record, such custodian shall within three days, exclusive of Saturdays, Sundays, and legal public holidays, of the receipt of the request, in writing for such record, notify in writing the person making such request of his determination and the reasons therefor.
Appellee attempts to justify withholding the autopsy reports because of a suspicion that appellant was not making a public records request; but, instead a thinly, veiled attempt to obtain an autopsy report for anticipated civil litigation without paying the usual expert fee for that report. LSA-R.S. 44:32(A) makes it clear that appellant’s purpose for requesting the records is not relevant and the statute even prohibits the custodian from inquiring into the requestor’s reasons for seeking the records.
|flWe conclude that appellant’s public records request was proper and that ap-pellee was legally obligated to produce copies of those records for a reasonable copying charge.[7] The trial court erred in holding to the contrary.
In light of our conclusions expressed hereinabove, we reverse the trial court’s decision awarding appellee attorney fees and remand this matter to the trial court for a determination of appellant’s claim for attorney fees and costs consistent with the opinions expressed herein.
All costs of this appeal are assessed against the appellee.
REVERSED AND REMANDED.
CARTER, J., concurs in part and dissents in part.
FITZSIMMONS, J., concurs for the reasons assigned by CARTER, J.

. The opinion of the trial court reads, in pertinent part:
The court finds that autopsy reports prepared by the coroner are private medical records, not public records. Although paid for by a public body such as the parish or municipality, autopsy reports are not automatically available for public consumption. They are to be released pursuant to the medical record statute by their custodian, the coroner.
* * * * *
An autopsy report may become a public record due to subsequent action. For instance, the District Attorney may introduce it as evidence in a criminal prosecution. Until such action is taken, it is a private and sensitive medical record.

. A number of cases define the coroner's office as a state entity. The office of the coroner is created by the constitution and its existence has been mandated by every state constitution since 1845. Mullins v. State, 387 So.2d 1151, 1152 (La.1980). Coroners are state officials who perform state functions. Mullins v. State, 387 So.2d at 1153. The coroner's office in Louisiana continues to perform state functions. LeJeune v. Causey, 93-0455, (La.App. 1 Cir. 3/11/94), 634 So.2d 34, 37. The legislature determines the duties of state officials such as coroners. Carriere v. St. Landry Parish Police Jury, 97-1914 (La.3/4/98), 707 So.2d 979, 981.

. La. Const, of 1974, art. 5, section 29.

. All writing prepared by the coroner for use in the conduct of any business which is performed under the authority of law would be subject to public inspection. Op.Atty.Gen., No. 89-604, Jan. 8, 1990. After notification of next of kin and upon final autopsy or investigation, the coroner's writings are public record. Op.Atty.Gen., No. 94-271, June 27, 1994; The coroner's report was considered a public record only in those cases not involving the apparent commission of a crime. Op. Atty.Gen., No. 79-1125, Oct. 4, 1979. "... [A] Coroner’s autopsy report is a public record ...”. State v. Cripps, 259 La. 403, 250 So.2d 382, 387 (La.1971). See also "... [5]ince the autopsy report is a public record ...". State v. Cook, 598 So.2d 481, 484 (La.App. 2nd Cir.1992).

.The records in question were autopsy reports.

. In Op.Atty.Gen. No. 96-270, June 25, 1996, the defendant, Dr. Keith R. Mack, sought the attorney general's opinion in determining whether the coroner’s office could charge for the disbursement of autopsy reports pursuant to LSA-R.S. 40:1299.4. In response to this inquiry, the following response was rendered:
The requested reproduction and release of final medical records compiled by the coroner's office is a legal disbursement of public records. The fees to be charged for this disbursement are provided for in LSA-R.S. 44:32.
[[Image here]]
In determining what constitutes "reasonable fees”, Attorney General Opinion 96-79 advised a mayoral office to follow LSA-R.S. 39:241, which authorizes the commissioner of administration to develop a uniform fee schedule for copies of public records of executive branch state agencies. We urge your office to adopt this schedule in order to ensure objective reasonableness for the fees charged by your office.