STEWART, J.
hln this public records request suit by Berry Chandler (“Chandler”) against the Ouachita Parish Sheriffs Office and sheriff (referred to together as the “OPSO”), the trial court granted a declaratory judgment in favor of Chandler and ordered the OPSO to pay reasonable attorney’s fees and the costs of litigation upon finding that it failed to provide certification as required under La. R.S. 44:34 to explain the absence of requested records from its custody or control. Asserting the that the trial court erred in failing to find that the OPSO was arbitrary and capricious in responding to his public records request and liable for damages and civil penalties, Chandler appealed this judgment.
*1219 In a subsequent judgment, the trial court awarded Chandler $17,000 in attorney’s fees and $3,546 in costs. Asserting that the trial court erred in awarding attorney’s fees and costs for a certification violation and that it abused its discretion in setting the amounts, the OPSO appealed. Chandler answered the appeal to seek an increase in the amounts awarded.
Finding no error or abuse of discretion by the trial court, we affirm in all respects.
FACTS
On September 10, 2010, Chandler sued the OPSO[1] for a declaratory judgment, writ of mandamus, injunctive relief, damages, penalties, and attorney’s fees for alleged violations of the Public Records Act, La. R.S. |¾44:1 et seq. Chandler made written requests for public records on July 1, 2010, and July 2, 2010. Chandler alleged that the OPSO’s responses were “woefully inadequate,” that it failed to timely produce the requested records, and that it acted arbitrarily and capriciously with respect to the records and its responses.
The OPSO answered and denied the allegations. Claiming that it acted reasonably and in good faith, the OPSO asserted that it provided the requested documents in its possession to Chandler.
On March 28, 2011, Chandler filed a first supplemental and amended petition based on additional public records requests made on September 23, 2010, and February 18, 2011. Chandler alleged that the OPSO’s responses to both requests were “woefully inadequate.” The OPSO denied the allegations.
Thereafter, Chandler filed a motion and rule to show cause to determine why relief as prayed for in his petition should not be granted. Though Chandler had requested numerous public records in his four separate written requests, he limited his rule to violations pertaining to two specific requests. The first request, which was made on July 1, 2010, concerned an Article 66 subpoena return.[2] Chandler alleged that the OPSO did not produce the return and that he had been advised by an OPSO officer that it had been destroyed. The second request, which was made on February 18, 2011, was for a recording of 19 telephone calls obtained by Deputy Michael Singley (“Singley”) from Tanya Coie Shoemaker |s(“Shoemaker”) in connection with an investigation of harassing calls allegedly made to her. Chandler alleged that he learned during a deposition that Singley had logged the recording of the calls into evidence. Chandler asserted that the recording of the 19 calls was not produced by the OPSO and had allegedly been destroyed, perhaps even after he requested them.
In response to the rule to show cause, the OPSO asserted that the records at issue did not exist when the request was made and that it could not produce nonexistent records.
At the hearing on September 21, 2011, Chandler called a number of witnesses in an attempt to discover what happened to the requested records and whether there was some cover-up that led to their de *1220 struction. Geary Aycock, an assistant district attorney for the 4th Judicial District, testified that Shoemaker contacted him in December 2009 because she was receiving harassing telephone calls and claimed that the OPSO was not following up on her complaint. Aycock contacted the OPSO on Shoemaker’s behalf. He had no involvement thereafter and denied participating in any cover-up of an investigation of Chandler in relation to the harassing calls allegedly made to Shoemaker. Aycock explained that Shoemaker had been a victim in a criminal prosecution against Chandler that resulted in a misdemeanor plea and that she had a pending civil suit against Chandler.
Sheriff Toney had no specific knowledge about the subpoena return or the recording of the 19 calls. He testified that he did not instruct anyone to destroy these records.
|4Sgt. John Asmussen (“Asmussen”) of the OPSO testified that he prepared the Article 66 subpoena after speaking with Shoemaker about the harassing calls. The subpoena was issued to Tracfone Wireless (“Tracfone”) to obtain records related to Shoemaker’s own phone and account. According to Asmussen, Tracfone’s return stated that it did not maintain the records requested beyond a set time period. Because the return had no evidentiary value, in that it could neither prove nor disprove that the calls had been made, he shredded the return. He denied doing this with any malicious intent and stated that no one directed him to destroy the return. He further testified that when asked to produce his records to respond to Chandler’s public records request, he produced a copy of the subpoena that he had prepared.
Colonel Mark Mashaw (“Mashaw”) of the OPSO was involved in responding to Chandler’s public records requests. He testified that he looked for the recording of the 19 calls but could not find them. Later, he spoke with Singley and figured out that he had recorded the voice messages on his belt recorder, which is typically used to record the daily contacts with the public. At the end of the day, the contacts are loaded onto a computer file that is maintained for ten days only. The recorded calls were filed with the daily contacts in error and apparently deleted after the ten-day period and “long before” Chandler requested them. Mashaw testified that he asked Asmussen to produce all he had regarding the Article 66 subpoena and that the information supplied by Asmussen was turned over to Chandler. He denied that anyone directed Singley to incorrectly log the recording or | ¡Asmussen to shred the subpoena return, and he maintained that the OPSO would have provided these records to Chandler if it had them.
Chandler also called Jay Russell, the OPSO’s then-chief deputy, to testify, but Russell was not involved in responding to Chandler’s public records requests before the suit was filed and did not have any knowledge about what had been provided. Lastly, Chandler called Lisa Martin, who was prosecuted for allegedly making the harassing calls to Shoemaker. Martin claimed that someone told her there was a tape with the calls on it but that she was never allowed to listen to the tape. She admitted that the person who told her a tape existed was not with the OPSO. Martin indicated that the charges against her were dismissed.
In written reasons for judgment, the trial court concluded that the OPSO violated La. R.S. 44:34 by failing to certify in writing the reasons for the absence from its custody of the recording of the 19 calls. The trial court found that the OPSO had merely informed Chandler that it did not have the recording and that the full explanation of what happened to the recording *1221 was not provided until the hearing. Because Chandler prevailed on this issue, the trial court found him to be entitled to reasonable attorney’s fees and costs of litigation in an amount to be agreed upon by the parties or, in the absence of an agreement, determined at a hearing. The trial court also found that the destruction of the recording was inadvertent, that the OPSO did not arbitrarily or capriciously withhold the recording from Chandler, and that Chandler failed to prove any actual damages. Thus, the trial court denied his claim for penalties and damages.
| (¡Asserting that the trial court’s ruling did not address the OPSO’s failure to produce the documents related to the subpoena return, Chandler filed a motion for a new trial. The trial court granted the motion and in supplemental reasons concluded that the OPSO violated La. R.S. 44:34 by failing to provide an explanation of what happened to the subpoena return until the trial of this matter. The trial court stated that the award of attorney fees and costs would likewise apply to this violation, and it concluded that Chandler was not entitled to any damages or penalties. The trial court found that the OPSO did not arbitrarily or capriciously withhold the return, which had been destroyed long before Chandler requested it, and that the OPSO was not unreasonable or arbitrary in failing to respond to Chandler’s request as required by La. R.S. 44:32.
The trial court signed a judgment on June 26, 2012, granting Chandler declaratory relief for the violations of La. R.S. 44:34 and awarding him reasonable attorney’s fees and costs of litigation in an amount to be agreed upon by the parties or, in the absence of an agreement, set at a hearing. His requests for mandamus and injunctive relief, penalties, and damages were denied. Chandler filed a devolutive appeal from this judgment on August 27, 2012.[3]
Thereafter, with Chandler seeking over $35,000 in attorney’s fees and costs, the parties were unable to reach an agreement, so Chandler filed a motion to set attorney’s fees. ■ The OPSO argued that the amount requested by Chandler was unreasonable for the two certification violations and that |7the billing records submitted showed that he was seeking fees for work that had nothing to do with this suit. The OPSO also complained that Chandler should not be awarded fees for work during the months prior to the filing of the motion / rule to show cause and after it was heard.
The trial court heard the matter and made an oral ruling on October 16, 2012. The trial court noted that there were many interrelated issues between this suit and Chandler’s other litigation and that “it’s hard to pinpoint just exactly what proportion of all of that work ties into this specific case here.” With that consideration in mind and based on the suit record of this matter and the billing records submitted by Chandler, the trial court awarded Chandler half of the amount requested along with all costs of the litigation. Accordingly, judgment was rendered on November 8, 2012, ordering the OPSO to pay Chandler $17,000 in attorney’s fees and $3,546 in costs. The OPSO filed a writ, which this court granted for perfection as an appeal.[4] Chandler answered the appeal to seek an increase in attorney’s fees and costs awarded by the trial court and for work done on appeal. He reiterated his request for penalties and damages. By *1222 order of this court, the two appeals were consolidated.
DISCUSSION

Chandler’s Appeal

Chandler asserts that the trial court erred in failing to find that the OPSO was arbitrary and capricious in responding to his public records requests and liable for damages and penalties. He argues that the intentional ^destruction of the 19 recorded phone calls and the subpoena return prior to the three-year retention period under La. R.S. 44:36(A) should be deemed arbitrary and capricious and that he should be awarded damages. Chandler suggests that the OPSO has some practice of destroying records it does not want to turn over to the public.
The OPSO counters that penalties and damages are not authorized for the certification violations found by the trial court or for the retention violation asserted by Chandler on appeal.[5] It also asserts that the trial court correctly determined that neither the intentional destruction of the subpoena return that lacked evidentiary value nor the inadvertent deletion of the recorded calls by a rookie deputy who saved them on the wrong computer file constitutes arbitrary, capricious, or unreasonable actions that would entitle Chandler to damages or penalties.
Proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, attorney’s fees, costs, and damages may be instituted by any person who has been denied the right to inspect or copy a public record, either by a final determination of the custodian or by the passage of five days, exclusive of weekends and legal public holidays, from the date of his request without receiving a written final determination by the custodian. La. R.S. 44:35(A). The remedy of civil penalties and damages is provided by La. R.S. 44:35(E)(1), which states:
If the court finds that the custodian arbitrarily or capriciously withheld the requested record or unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32, |9it may award the requester any actual damages proven by him to have resulted from the actions of the custodian except as hereinafter provided. In addition, if the court finds that the custodian unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32 it may award the requester civil penalties not to exceed one hundred dollars per day, exclusive of Saturdays, Sundays, and legal public holidays for each such day of such failure to give notification.
The enforcement provisions of La. R.S. 44:35 presuppose the existence of the records in the office of the custodian. Nix v. Daniel, 95-1393 (La.App. 1st Cir.2/23/96), 669 So.2d 573, writ denied, 96-0878 (La.10/25/96), 681 So.2d 360; Revere v. Taylor, 613 So.2d 738 (La.App. 4th Cir.1993), writ denied 615 So.2d 332 (La.1993). Moreover, whether civil penalties or damages may be awarded under La. R.S. 44:35(E)(1) is based on whether the custodian arbitrarily or capriciously withheld the requested records or arbitrarily or unreasonably failed to respond to the request as required by La. R.S. 44:32. The provisions in La. R.S. 44:32 address the duty of the custodian to permit examination of public records and its duty if it questions whether a record is a public record. Thus, this statute, like the enforcement provisions under La. R.S. 44:35, *1223 presupposes the existence of the records in the office of the custodian.
The absence of a public record from the custody or control of the person to whom a public records request is directed is addressed by La. R.S. 44:34 as follows:
If any public record applied for by an authorized person is not in the custody or control of the person to whom the application is made, such person shall promptly certify this in writing to the applicant, and shall in the certificate state in detail to the best of his knowledge and belief, the reason for the absence of the record from his custody or control, its location, what person then has custody of the record and the manner and method in which, and the exact time at |1ftwhich it was taken from his custody or control. He shall include in the certificate ample and detailed answers to inquiries of the applicant which may facilitate the exercise of the right granted by the Chapter.
The trial court determined that the OPSO failed to provide the certification required by La. R.S. 44:34 as to the absent recording of the 19 calls and the subpoena return. Though this finding is not before us on appeal, we agree with the trial court. We also agree with its finding that penalties and damages are not available for this violation. La. R.S. 44:35(E)(1) does not authorize an award of penalties or damages for a violation of the certification provision. Moreover, Chandler did not prove any actual damages.
Additionally, the record supports the trial court’s findings that the OPSO did not arbitrarily or capriciously withhold the requested records or arbitrarily or unreasonably fail to respond to his requests. The OPSO did not produce the requested records at issue because they no longer existed when Chandler made his requests. The OPSO could not unreasonably or arbitrarily fail to respond to Chandler’s requests as required by La. R.S. 44:32 when it no longer had the recorded calls or subpoena return. It could not withhold what it no longer had in its custody or control. The 19 calls recorded by Singley in December 2009 were inadvertently deleted within days because they were stored on the wrong computer file. The record also shows that the Article 66 subpoena was issued in December 2009. Asmussen shredded the subpoena return because Tracfone did not have the information requested. He testified that the subpoena return had no evidentiary value. Nothing in the record indicates that Asmussen or | nSingley acted on orders in shredding the subpoena return or misfiling the recorded calls. Nothing in this record indicates a practice on the part of the OPSO of destroying records it does not want the public to see. The public records at issue were destroyed inadvertently and without malicious intent prior to Chandler’s public records requests. The trial court did not err, manifestly or otherwise, in finding that the OPSO’s actions with respect to Chandler’s public records requests were neither arbitrary, capricious, nor unreasonable.
Chandler also argues that the destruction of the requested records prior to the three-year retention period set forth in La. R.S. 44:36(A) should be deemed arbitrary, capricious, or unreasonable and entitle him to penalties and damages under La. R.S. 44:35(E)(1). In the absence of a formal retention schedule, a public record shall be preserved and maintained for at least three years from the date the record was made. La. R.S. 44:36(A). The record indicates that the OPSO did not have a formal retention schedule. Moreover, it is clear that the OPSO did not retain the subpoena return and recording of the 19 calls for three years as required by La. *1224 R.S. 44:36(A). Though the OPSO’s destruction of the records at issue appears in violation of La. R.S. 44:36, penalties and damages are not authorized under La. R.S. 44:35(E)(1) for a violation of the retention requirements. In Tectrans, Inc. v. New Orleans Aviation Bd., 695 F.Supp.2d 313 (E.D.La.2010), the court concluded that the deletion of emails by employees of the New Orleans Aviation Board constituted a violation of the retention provisions under La. R.S. 44:36 and entitled the plaintiff to recover reasonable [^attorney’s fees and costs of litigation under La. R.S. 44:35(D). We agree with this outcome. The trial court awarded Chandler reasonable attorney’s fees and costs for the certification violations. As such, this same award suffices to encompass the violation of La. R.S. 44:46(A).
For these reasons, we find no merit to Chandler’s assignment of error and affirm the trial court’s June 26, 2012, judgment.

The OPSO’s Appeal and Chandler’s Answer

The OPSO assigns as error the trial court’s award of attorney’s fees and costs for the certification violation. Chandler asserts that the OPSO did not appeal the June 26, 2012, judgment and cannot in this appeal seek review of the merits of the award of attorney’s fees and costs for the certification violation. Chandler’s argument has merit.
In the June 26, 2012, judgment, the trial court declared that the OPSO violated La. R.S. 44:34 and ordered it to pay reasonable attorney’s fees and costs, directing that the amount was to be agreed upon by the parties or set at a hearing upon the motion of the petitioner if they failed to reach an agreement. Chandler appealed this final judgment, as addressed supra. The OPSO neither appealed nor answered the appeal. A defendant who has not appealed or answered an appeal may not obtain a modification of the judgment. La. C.C.P. art. 2133; Matthews v. Consolidated Companies, Inc., 95-1925 (La.12/8/95), 664 So.2d 1191, rehearing denied, 95-1925 (La.1/26/96), 666 So.2d 662. Having failed to appeal the judgment ordering it to pay attorney’s fees and costs, the OPSO may not, through its 11sappeal of the November 8, 2012, judgment setting the amount of these awards, seek review of the merits of the June 26, 2012, judgment.
In this appeal of the judgment setting the amount of attorney’s fees and costs, the OPSO urges that the trial court abused its discretion in awarding $17,000 in attorney’s fees and $3,456 in costs. It asserts that the trial court was unable to determine an appropriate award and simply “split the baby” by awarding Chandler half of the $35,000 in fees that he was seeking. In its answer to the OPSO’s appeal, Chandler seeks an increase in the amount of attorney’s fees awarded.
The public’s right to access public records is a fundamental right guaranteed by the state constitution. La. Const, art. 12, § 3; Title Research Corp. v. Rausch, 450 So.2d 933 (La.1984). In accordance with this fundamental right, the public records statutes should be construed liberally. Id. With regard to attorney’s fees and costs, La. R.S. 44:35(D) states:
D. If a person seeking the right to inspect or to receive a copy of a public record prevails in such suit, he shall be awarded reasonable attorney’s fees and other costs of litigation. If such person prevails in part, the court may in its discretion award him reasonable attorney’s fees or an appropriate portion thereof.
The amount of an award for attorney’s fees is within the discretion of the trial court. Dwyer v. Early, 2002-1545 (La. *1225 App. 4th Cir.3/12/08), 842 So.2d 1124, writ denied, 2003-1013 (La.5/30/03), 845 So.2d 1053; Bohn v. Louisiana Farm Bureau Mut. Ins. Co., 482 So.2d 843 (La.App. 2d Cir.1986), units denied, 486 So.2d 750 (La.1986) and 486 So.2d 752 (La.1986). Generally, each case is considered in light of its own facts and circumstances, but the amount awarded must be reasonable. Bohn, supra.
1 uThe OPSO complains that the billing records submitted by Chandler “purportedly pertain to a completely separate action” and should have been disregarded by the trial court. However, counsel for Chandler explained that he redacted those billings that pertained to other matters being handled for Chandler. Moreover, the record shows that the trial court was aware of the background proceedings involving Chandler and the work done in this matter by counsel for Chandler.
The OPSO also asserts that the attorney’s fees should be limited to the sole issue upon which Chandler prevailed. It claims that Chandler knew for six months prior to the hearing that the records did not exist and that he could have simply propounded an interrogatory to the sheriff to find out what happened. Instead, Chandler went forward with a hearing in a failed attempt to show that the records at issue were improperly withheld.
There was no dispute concerning whether the records at issue were public records. The records were destroyed by OPSO personnel, though there was no showing that this was done to prevent Chandler’s access to them. In fact, it appears that the recording of the 19 calls and the subpoena return had been destroyed prior to Chandler’s requests. When Chandler requested the records at issue, the OPSO did not certify the reason for their absence as required by La. R.S. 44:34. Though the OPSO suggests that Chandler could have avoided a hearing by simply propounding an interrogatory, we observe that the OPSO could have avoided this controversy by simply complying with its duties under the public records laws. A member of the public should not have to file a suit to obtain access hsto a public record or information on what happened to records that should have been preserved by the custodian.
The transcript of the hearing on attorney’s fees shows that the trial court recognized that this matter involved many interrelated issues and that there was some relation as well with other proceedings involving Chandler. It was within the trial court’s discretion to determine that $17,000 was a reasonable fee considering the work done in this matter from the filing of the initial petition until the judgment on the attorney’s fees and costs was obtained. Having reviewed this record and the billing records submitted by Chandler, we find no abuse of discretion by the trial court in awarding $17,000 in attorney’s fees. Accordingly, we find no merit to the OPSO’s claim that the fees should be reduced and no merit to Chandler’s claim that they should be increased to $35,000.
The OPSO also asserts error in the trial court’s award of costs. As previously stated, the OPSO did not appeal or answer the appeal of the June 26, 2012, judgment that ordered it to pay the costs of litigation. It does not appear from the record that the OPSO objected to the amount of costs as represented by Chandler to the trial court. Pursuant to La. C.C.P. art.1920, a trial court may render judgment for costs, or any part thereof, against any party. We find no abuse of discretion by the trial court in ordering the OPSO to pay costs totaling $3,546.
*1226 Lastly, Chandler seeks an additional $4,000 in attorney’s fees and costs for appellate work. It is within the appellate court’s discretion to award or increase attorney’s fees for appellate work. Nesbitt v. Nesbitt, 46,514 (La.App.2d Cir.9/21/11), 79 So.3d 347, writ denied, 2011-2301 (La.12/2/11), 76 So.3d 1178. Both parties challenged parts of the trial court’s judgments in this matter and neither succeeded on the issues they presented. Chandler did not obtain an increase in the amount of attorney’s fees awarded by the trial court, and he did not obtain an award of penalties or damages in his separate appeal of the judgment on the merits. With these considerations in mind and in light of the substantial award of attorney’s fees made by the trial court in this limited matter, we decline to increase attorney’s fees for appellate work.
CONCLUSION
For the reasons set forth in this opinion, we affirm the judgments of the trial court in all respects. Each party is to bear his own costs of appeal.
AFFIRMED.

. A sheriffs office is not a legal entity capable of being sued. Ferguson v. Stephens, 623 So.2d 711, 714-715 (La.App. 4th Cir.1993), and cases cited therein. Chandler initially named the sheriff's department as the defendant, but he substituted then Sheriff Royce Toney ("Sheriff Toney”) as the party defendant by a motion on September 20, 2010. As stated, this opinion refers to the defendant(s) as the "OPSO.”

. This refers to a subpoena duces tecum issued pursuant to La. C. Cr. P. art. 66.

. Chandler’s appeal was lodged in this court under docket number 48,179-CA.

. This appeal by the OPSO was lodged under docket number 48,403-CA.

. The OPSO did not appeal the trial court’s judgment on the merits and did not answer the appeal.