Judge Daniel L. Dysart
11 Gerald Hatcher, an inmate at the Avo-yelles Correctional Center, appearing herein pro se, appeals the trial court’s judgment sustaining a dilatory exception of unauthorized use of a summary proceeding and dismissing his petition for a writ of mandamus. As discussed more fully herein, the trial court correctly dismissed the writ of mandamus filed against the defendant, the coroner for Orleans Parish, Dr. Jeffrey Rouse, M.D. We, therefore, affirm the trial court’s judgment.
FACTS AND PROCEDURAL BACKGROUND
The limited record before us reflects the following facts.
On July 28, 2015, Mr. Hatcher filed a “Writ of Mandamus” (hereafter referred to as the “Writ”) against Dr. Rouse in which he sought to obtain certain unidentified records or documents. In his Writ, Mr. Hatcher alleges that he was charged by bill of information “based, in part, on the forensic evidence that is/was within the custody and control of [Dr.] Rouse.” He then alleges that “[t]he matter was assigned Item Number H3007087[;] thereafter various tests were issued and | ^documents prepared and produced.”[1] Mr. Hatcher next alleges that, once his conviction became final, “the records maintained to utilize [his] conviction” became “open to public inspection.”
According to his Writ, on June 15, 2015, Mr. Hatcher made a “second Request” of Dr. Rouse for public records pursuant to La. R.S. 44:32. Because Dr. Rouse did not respond to his written request, Mr. Hatch-er filed the instant action. Through this proceeding, Mr. Hatcher sought a finding that Dr. Rouse “has abrogated the provisions of [La. R.S.]44:32,” ordering that he comply with Mr. Hatcher’s “request for inspection and production,” and pay the costs for the proceeding and “punitive damages in the amount set-forth in the relevant statute.”
In response to the Writ, Dr. Rouse filed a Dilatory Exception of Unauthorized Use of Summary Proceeding. In his exception, Dr. Rouse argued that he had complied with Mr. Hatcher’s request by informing him, by letter dated August 11, 2015, that he had no records relating to the item *433 number Mr. Hatcher provided and, more specifically, that the item number did not correlate to any files contained within the coroner’s office.
A hearing was held on Dr. Rouse’s dilatory exception of unauthorized use of a summary proceeding and by judgment dated October 23, 2015, the trial court maintained the exception and also dismissed Mr. Hatcher’s Writ. Mr. Hatcher then filed an application with this Court for a writ of supervisory review of the trial court’s October 23, 2015 judgment. Finding that the judgment was a final, |3appealable judgment, on January 26, 2016, this Court transferred the writ application to the trial court and instructed Mr. Hatcher to convert the application to a motion for appeal. Mr. Hatcher then filed a Motion for Appeal on February 5, 2016. This appeal followed.
DISCUSSION
While the trial court did not issue reasons for judgment, and none were requested by either party, at the hearing on the exception, the trial court commented that, under the provisions of the Public Records Act, Mr. Hatcher, as a “person in custody following a felony conviction following post appellate procedures,” was required to file his request “in Criminal District Court through... Post-Conviction Relief Application.” The trial court did not expressly make a determination that Mr. Hatcher’s suit was impermissibly employing a summary proceeding. While we find that the trial court erred in granting the dilatory exception of unauthorized use of a summary proceeding under these circumstances, we find that the trial court’s dismissal of the Writ was not an abuse of the trial court’s discretion, albeit for reasons other than those assigned by the trial court.[2]
Louisiana Code of Civil Procedure article 926 A(3) provides for the dilatory exception of unauthorized use of a summary proceeding. Dr. Rouse correctly notes our jurisprudence which indicates that “[t]he proper method of opposing 14[the] use [of mandamus] is to raise the dilatory exception urging the objection of unauthorized use of a summary proceeding.” Martin v. Bonanno, 421 So.2d 359, 362 (La. App. 1 Cir. 1982). However, this exception is only designed to test whether an action should proceed in a summary manner rather than by ordinary proceeding. See, e.g., Cent. Cmty. Sch. Bd. v. E. Baton Rouge Par. Sch. Bd., 08-0036, p. 11 (La.App. 1 Cir. 6/6/08), 991 So.2d 1102, 1110 (the “determination of the issue of the Central Board’s rights, if any, to these tax funds is not appropriate in a mandamus proceeding... relief is available through ordinary proceedings”); Judson v. Davis, 04-1699, p. 10 (La.App. 1 Cir. 6/29/05), 916 So.2d 1106, 1114 (in determining whether it was “procedurally improper to assert an action for corporate dissolution in a recon-ventional demand to a mandamus action,” the court noted that “the mode of procedure for [this] action ... is an ordinary proceeding, rather than a summary proceeding); Melancon v. Police Jury of Lafayette, 301 So.2d 715, 719 (La. App. 3d Cir. 1974) (in an action against “Police Jury and the Planning Commission to revoke its approval of the subdivision plat,” the court held that the plaintiff appellant was “not entitled to a writ of mandamus but must seek his relief by ordinary process”).
*434 Louisiana Code of Civil Procedure article 2592 specifically provides that mandamus shall be tried as a summary proceeding. It states, in pertinent part:
Summary proceedings may be used for trial or disposition of the following matters only:
⅜ * * * *
|fi(6) A habeas corpus, mandamus, or quo warranto proceeding.
La. C.C.P. art. 2692(6)(emphasis added). Our jurisprudence recognizes that “mandamus proceedings are clearly allowed to be asserted as summary proceedings.” Great Lakes Dredge & Dock Co., LLC v. State ex rel. Coastal Prot. & Restoration Auth., 14-0249, p. 4 (La.App. 1 Cir. 11/7/14), 167 So.3d 682, 685; see also, Smith v. St. Tammany Fire Prot. Dist. No. 1, 97-2003, p. 3 (La.App. 1 Cir. 9/25/98), 723 So.2d 994, 995.
Louisiana Code of Civil Procedure article 3861 defines mandamus as “a writ directing a public officer or a corporation or an officer thereof to perform any of the duties set forth in Articles 3863 and 3864.” In Aberta, Inc. v. Atkins, 12-0061, pp. 2-3 (La. 5/25/12), 89 So.3d 1161, 1163, our Supreme Court explained the use of mandamus:
Pursuant to La. C.C.P. art. 3863, “[a] writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law, ...” Further, “[a] writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice ...” La. C.C.P. art. 3862; Board of Trustees of Sheriff’s Pension and Relief Fund v. City of New Orleans, 02-0640 (La. 5/24/02), 819 So.2d 290, 291 (“mandamus is an extraordinary remedy which should be applied only where ordinary means fail to afford adequate relief’). This Court has explained that “mandamus will only issue where the action sought to be compelled is ministerial in nature, i.e., where it contains no element of discretion.” Newman Marchive Partnership, Inc. v. City of Shreveport, 07-1890 (La. 4/8/08), 979 So.2d 1262, 1269; Hoag v. State, 04-0857 (La. 12/1/04), 889 So.2d 1019, 1023. In Hoag, we defined a ministerial duty as a “simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law.” 889 So.2d at 1024.
16In the instant matter, Mr. Hatcher is seeking to obtain documents from the coroner’s office under the Public Records Law, La. R.S. 44:1 et seq. That a writ of mandamus is the proper procedural means by which to require a public officer to produce public records (unless an exception applies) is evident both from the Public Records Law and case law. In enacting the Public Records Law, the Legislature recognized that “[pjroviding access to public records is a responsibility and duty of the appointive or elective office of a custodian and his employees.” La. R.S. 44:31 A. Under this Law, “any person may obtain a copy or reproduction of any public record.” La. R.S. 44:31 B(2). Likewise, when a request for public records has been made, “[t]he custodian shall present [the] public record[s] to any person of the age of majority who so requests.” La. R.S. 44:32 A. Citing La. R.S. 44:35 A, this Court noted that, when a request for public records has been made and, “[i]f the requester has been denied the right to inspect or copy a record.. .the requester may institute proceedings for the issuance of a writ of mandamus ....” Innocence Project New Orleans v. New Orleans Police Dep’t, 13-0921, p. 4 (La.App. 4 Cir. 11/6/13), 129 So.3d 668, 672; see also, Vandenweghe v. Par. of Jefferson, 11-52, pp. 12-13 (La. App. 5 Cir. 5/24/11), 70 So.3d 51, 59 (“man *435 damus, which under the Public Records Law, has a specific procedure in place to determine the nature of the requested items, is an appropriate remedy for ordering the release of public records”).
The records of a coroner have been held to be public records subject to the Public Records Law. In Bozeman v. Mack, 97-2152, p. 5 (La.App. 1 Cir. 12/21/98), 744 So.2d 34, 37, the court held that “[bjecause the coroner’s office is a ‘public bod/ whose existence is mandated by the Louisiana State Constitution, the records produced therein are public records under the provisions of LSA-R.S. 44:1, unless they are specifically exempted from the public records law.”[3] The Bozeman court found that, under the Public Records Law, the plaintiff was entitled to the autopsy reports of her daughter and granddaughter, holding that “an autopsy report is a public record when it is prepared by a coroner in his public capacity as coroner.” Id., 744 So.2d at 37; see also, Everett v. S. Transplant Serv., Inc., 97-2992 (La. 2/20/98), 709 So.2d 764, in which the Supreme Court reinstated the trial court’s finding that a coroner’s records were public records.
Here, it is clear that Dr. Rouse is the duly elected coroner for Orleans' Parish, and because the records maintained by his office are public (unless exempted and to the extent that Dr. Rouse has records responsive to Mr. Hatcher’s request), Mr. Hatcher properly invoked a mandamus proceeding and the trial court erred in maintaining the exception of unauthorized use of a summary proceeding.
However, we find no error in the trial court’s dismissal of Mr. Hatcher’s Writ. Under the Public Records Law:
If any- public record applied for by any authorized person is not in the custody or control of the person to whom the application is made, such person shall promptly certify this in writing to the applicant, and shall in the certificate state in detail to the best of his knowledge and belief, the reason for the absence of the record from his custody or control, its location, what person then has custody of the record and the manner and method in which, and the exact time at which it was taken from his custody or control. He shall include in the certificate ample and detailed answers to inquiries of the applicant which may facilitate the exercise of the right granted by this Chapter.
La. R.S 44:34.
|8The record reflects that Mr. Hatcher sent a letter to the “Orleans Parish Corners [sic] Office” requesting “all the records that the Corners [sic] Office possesses in relationship [sic] to the above captioned item.”[4] The item number referenced in the letter was “H3007087.”
The Coroner’s Office, through its attorney, Benjamin J. Biller, responded to Mr. Hatcher’s request on August 11, 2015 and indicated:-.
The Coroner is not in the custody or control of any records relating to an item number H3007087. That type of number does not correlate to any files maintained by the Coroner.
If you would like to send an additional request with more specific details about the records sought, we would be happy to perform another search.
*436 Mr. Hatcher responded by sending a letter to Mr. Billings on August 17, 2015,[5] advising that the item number “was in reference to the documentation received by the Assistant District Attorney’s Office with respect to the forensic testing that was submitted.” He then asserted that Mr. Billing’s response that there was insufficient information with which to respond to the request was “dubious.... Instead it is incumbent upon the City to allow inspection and the recent jurisprudence certainly suggests the City has, and continues, to circumvent the rights of inspection.” He then clarified that he was seeking “all the forensic testing that was conducted, the files maintained in the respective case, the chain of custody documentation,” again referencing the same item number.
To Mr. Hatcher’s second letter, Mr. Billings responded by letter dated August 25, 2015 to Mr. Hatcher and informing him as follows:
| ¡¡The Coroner of the Parish of Orleans is a separate and distinct entity from the City of New Orleans and the District Attorney.... Again, the Coroner is not in the custody or control of any records relating to item number H3007087. However, such records may be in the possession of the City of New Orleans or the District Attorney’s office of whatever parish prosecuted your case. A public records request directed to those entities may be warranted.
Mr. Billing then cited La. R.S. 44:31.1, which provides:
For the purposes of this Chapter, person does not include an individual in custody after sentence following a felony conviction who has exhausted his appellate remedies when the request for public records is not limited to grounds upon which the individual could file for post conviction relief under Code of Criminal Procedure Article 930.3. Notwithstanding the provisions contained in R.S. 44:32, the custodian may make an inquiry of any individual who applies for a public record to determine if such individual is in custody after sentence following a felony conviction who has exhausted his appellate remedies and the custodian may make any inquiry necessary to determine if the request of any such individual in custody for a felony conviction is limited to grounds upon which such individual may file for post conviction relief under Code of Criminal Procedure Article 930.3.[6]
In compliance with this statute, Mr. Billings requested that Mr. Hatcher provide information as to whether he was in custody as a result of a felony | inconviction, whether he had exhausted all appeals of that conviction and, if he is an incarcerated, convicted felon who has exhausted all *437 of his appeals, and for what purpose he was requesting the records. He likewise sought additional information with which to conduct a search for records, including “the name of the court in which Case Number 325-618 was. prosecuted, the charges against [him], [t]he identity of the alleged victim(s) of [his] crime, the disposition of the case, the date on which the judgment in that case became final, and a specific description of the forensic test results [he was] seeking and the date(s) of the forensic test results.” It does not appear that Mr. Hatcher responded to this letter.
We find that Dr. Rouse’s response complies adequately with La. R.S. 44:34 and as such, the trial court properly dismissed Mr. Hatcher’s Writ. We find support for the trial court’s ruling in the ease of Hunter v. Pennington, 98-1821 (La.App. 4 Cir. 1/20/99), 726 So.2d 1082. In Hunter, an inmate serving a life term for second degree murder, sought to obtain records from the Orleans Parish Sheriff. He sent a public records request for certain documents related to his trial and conviction. The Sheriff responded by providing one document responsive to the request, but with respect to certain log books sought by the inmate, the Sheriff responded that “the log books ‘are not maintained for more than three years; therefore, the log book entries that plaintiff requested have not existed for seven years.’” Id., p. 2, 726 So.2d at 1083. The trial court found the response sufficient and dismissed the writ of mandamus action. In affirming the judgment, this Court found no error, noting “that assertion that the log books in question have not existed for seven years satisfies the requirements of the statute;” namely, that “the public official shall state in writing ‘to the best of his knowledge and belief, the reason for the absence of the record from his custody or control, its location, what InPerson then has custody of the record and the manner and method in which, and the exact time at which it was taken from his custody or control.” Id., p. 2, 726 So.2d at 1083-84.
Based on the record before us, we find that Dr. Rouse’s response to Mr. Hatcher’s records request complied with La. R.S. 44:34. Because Dr. Rouse was unable to even identify any records based on the information provided by Mr. Hatcher, his response clearly sought additional information so that he could search for the records requested. Mr. Hatcher’s next letter provided the same information as that contained in his initial letter, although he repeatedly referred to records maintained by the City of New Orleans. Counsel for Dr. Rouse then responded by again advising that it had no records relating to the item number provided by Mr. Hatcher and further advising that the records he sought may be in the possession of the City of New Orleans or the district attorney’s office in the parish in which he was prosecuted.
The custodian of public records cannot be expected to produce records that it cannot identify. To the contrary, the custodian’s statutory duty is “to provide immediate access to records that are available.” All. for Affordable Energy v. Frick, 96-1763, p. 7 (La.App. 4 Cir. 5/28/97), 695 So.2d 1126, 1132 (emphasis added). As Dr. Rouse was unable to identify records pertaining to Mr. Hatcher’s request, we find no abuse of the trial court’s discretion in denying the request for a Writ and dismissing it. As the Louisiana Supreme Court once found, “[u]nder these circumstances [of this case], a mandamus would not serve a useful purpose and should not issue.” Reynolds v. Louisiana Highway Comm’n, 163 La. 125, 111 So. 622, 624 (La. 1927).
*438 112We likewise find no abuse of discretion in the trial court’s failure to award civil penalties under La. R.S. 44:85. Under Subpart E(l) of that statute, “if the court finds that the custodian unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32 it may award the requester civil penalties not to exceed one hundred dollars per day, exclusive of Saturdays, Sundays, and legal public holidays for each such day of such failure to give notification.” If a trial court finds that the custodian unreasonably or arbitrarily failed to respond to a public records request within the three-day statutory period, “it may award the requester civil penalties not to exceed one hundred dollars per day, exclusive of Saturdays, Sundays, and legal public holidays for each such day of such failure to give notification.” La. R.S. 44:35 E(l) (emphasis added). Innocence Project New Orleans, 13-0921, p. 8, 129 So.3d at 673-74. Mr. Hatcher maintains that there were “fifty qualifying days” between his request for records and Dr. Rouse’s initial response to the request and he seeks an award of penalties for this delay.
While the record does not reflect the date on which Mr. Hatcher’s initial letter was received by Dr. Rouse, this suit was filed on July 28, 2015. Dr. Rouse was served with the Writ on August 13, 2015. Dr. Rouse’s initial letter to Mr. Hatcher is dated August 11, 2015. Thus, it is unclear when Dr. Rouse received Mr. Hatcher’s letter for purposes of analyzing whether his response was timely. However, even assuming that the response was not timely, as we noted in Innocence Project New Orleans, “an award of civil penalties under Public Records Law is discretionary with the trial judge, and we will review the award under an abuse-of-discretion standard.” Id. Under the circumstances of this case, we find that the trial court did not abuse its discretion in failing to award penalties to Mr. Hatcherl
In Johnson, supra, 46,914, p. 1, 86 So.3d at 33, the Second Circuit considered whether the trial court erred in failing to award civil penalties when a convicted rapist sought “the cost of all reports concerning an incident that occurred at 1613 Brittan Street in Coushatta on or about January 3, 2006.” Almost three months later, and after he filed a writ of mandamus, the City of Coushatta issued a letter advising that no such document existed, but enclosed a copy of a report related to a January 2, 2006 incident. In affirming the trial court’s denial of the plaintiffs request for civil penalties, the court noted that the plaintiff “requested only the cost of a copy of a report—a document that did not exist.” Id., p.4, 86 So.3d at 35. The Court then noted that the report was ultimately provided to him and found that “[the City of] Coushatta used its best efforts to comply with Johnson’s request” and found no error in the trial court’s failure to award penalties. Id. See also, Chandler v. Ouachita Par. Sheriffs Office, 48,179, p. 10 (La.App. 2 Cir. 8/7/13), 121 So.3d 1216, 1223 (“The OPSO did not produce the requested records at issue because they no longer existed when Chandler made his requests. The OPSO could not unreasonably or arbitrarily fail to respond to Chandler’s requests as required by La. R.S. 44:32 when it no longer had the recorded calls or subpoena return. It could not withhold what it no longer had in its custody or control.”); Washington v. Reed, 95-1067, p. 4 (La.App. 1 Cir. 2/23/96), 668 So.2d 1313, 1315 (where the “Clerk of Court responded to appellant’s public records request with a letter in which she stated that her office did not possess any lists containing the information that the appellant sought” and the district attorney “stated that his office could not locate the petitioner’s file,” the court found no' error “in *439 failing to |14find that these agencies were arbitrary and capricious in not furnishing public records”).
We find these cases analogous to the instant matter. Because Dr. Rouse was unable to locate any records using the information provided by Mr. Hatcher, he cannot be said to have been arbitrary or capricious in not furnishing records in response to Mr. Hatcher’s request.
CONCLUSION
For the reasons set forth above, we affirm the trial court’s dismissal of Mr. Hatcher’s Writ of Mandamus.
AFFIRMED
LANDRIEU, J., CONCURS IN THE RESULT WITH REASONS

. Mr. Hatcher does not specify what is meant by the "matter” or to what "Item Number H3007087” refers.

. An appellate court reviews "a trial court's decision to deny a request for a writ of mandamus under an abuse of discretion standard.” Constr. Diva, L.L.C. v. New Orleans Aviation Bd., 2016-66, (La. App. 4 Cir. 12/14/16), 206 So.3d 1029, 1037, 2016 WL 7235731, at *6.

. La. R.S. 44:1 A(2) legislatively defines what constitutes a public record. Bozeman, 97-2152, p.5, 744 So.2d at 37.

. The letter is undated and, while Mr. Hatch-er attached copies of certified mail documents, none reflect the date on which the certified mail was received by the coroner’s office.

. The record reflects that Dr, Rouse was served with the Writ on August 13, 2015.

. Under this statute, "[a]n exception to the right to inspect or copy public documents and records for certain prisoners is found in La. R.S. 44:31.1, which states, in part: For the purposes of this Chapter, person does not include an individual in custody after sentence following a felony conviction who has exhausted his appellate remedies when the request for public records is not limited to grounds upon which the individual could file for post conviction relief under Code of Criminal Procedure Article 930.3.” Johnson v. City of Coushatta, 46,914, p. 3 (La.App. 2 Cir. 1/25/12), 86 So.3d 32, 34. The Johnson court found that the plaintiffs "petition does not establish that his request for the cost of the report is limited to grounds upon which he could file a petition for post conviction relief.” Id., p. 4, 86 So.3d at 34. In the instant matter, Mr. Hatcher gives no information about his conviction, when that conviction was made final, whether he exhausted his appellate remedies or whether he was seeking documents related to grounds on which he could seek post-conviction relief.