Judge Rosemary Ledet
_JjThis is a mandamus action seeking to obtain documents pursuant to the Louisiana Public Records Law, La. R.S. 44:1, et seq.[1] Darnell Lewis—an inmate appearing pro se—filed this mandamus action seeking various records relating to his 1998 criminal convictions. Mr. Lewis named three defendants—the Superintendent of Police of the New Orleans Police Department (the “NOPD”); the Orleans Parish District Attorney, Leon Cannizzaro (the “ODA”); and the Criminal District Court’s Clerk of Court, Arthur Morrell (“Mr. Mor-rell”) (collectively the “Defendants”). From the trial court’s judgment dismissing this action, Mr. Lewis appeals. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
In 1998, Mr. Lewis was convicted of armed robbery and attempted second-degree murder. Thereafter, he was adjudicated a second felony offender on the armed robbery conviction and sentenced to serve 160 years at hard labor without benefit of parole, probation, or suspension of sentence on the multiple bill. On the attempted second-degree murder conviction, he was sentenced to serve 50 years at | ¡¡hard labor without benefit of parole, probation, or suspension of sentence. The sentences were ordered to run concurrently with each other. On appeal, Mr. Lewis’ convictions and sentences were affirmed. State v. Lewis, 99-2891 (La.App. 4 Cir. 10/4/00), 771 So.2d 330 (unpub.), writ denied, 01-0102 (La. 11/21/01), 802 So.2d 626.[2]
On April 27, 2011, Mr. Lewis filed this mandamus action in Orleans Parish Civil District Court. In his petition, Mr. Lewis *739 averred that he has made multiple requests for the initial police report to the NOPD, in particular, and to the Defendants, in general. He averred as follows:
Movant has requested the police report of what occurred on the scene of the crime. Crime scene at 6733 Chef Hwy and Dale Street, 5 September 1997, at times 2014 [8:14 p.m.] ....
Movant requests] the police report to the Unit and Officer who responded] and was present at the crime scene, at 6733 Chef Hwy and Dale Street at 2014.
Movant has requested] repeatedly for the report that was taken and written by the officer(s) whom were present at the crime scene. However, the Police Department has continually responded as follows:
Police Department has sent reports to Movant that are not requested:
[ (i) Officer Neyrey’s report stating he located himself to the victim’s home at 8:28 P.M.; and
ls(ii) Detective Patrolia’s report stating he too went to the victim’s home later at 12:30 A.M.] ...
Before Officer Neyrey[’s] report at 8:28 at the victimf’s] home, a police unit and officer had _to go to the crime scene and meet with the victim and witnesses, because the dispatch log indicate^] that a unit was at the crime scene at 2014. (emphasis in the original).
Based on the above averments, Mr. Lewis requested that the trial court order the Defendants to produce the “on the scene report of the incident” and that it order an evidentiary hearing.[3]
Prom the date of the filing of the petition—-April 27, 2011—until August 26, 2015—the date of correspondence from Mr. Lewis—there was no activity in this mandamus action.[4] On August 25, 2015, correspondence from Mr. Lewis—labeled “Application for Writ of Mandamus”—-was filed into the record. In his August 26, 2015 correspondence, Mr. Lewis referred to a July 23, 2015 public records request on the NOPD seeking, among other things, the initial police report from the officer who arrived on the scene at 8:14 p.m.
On January 8, 2016, the trial court denied Mr. Lewis’ request in his original petition for an evidentiary hearing on his writ of mandamus. In April 2016, a status conference was held; Mr. Lewis was allowed to participate by phone. At that conference, Mr. Lewis’ sole request was for the production of the initial police report. The trial court directed the ODA to provide copies of all the police reports Lprepared during the course of the investigation of Mr. Lewis’ criminal case. Mr. Lewis acknowledges that the ODA complied with the trial court’s" directive. By correspondence dated June 18, 2016, Mr. Lewis informed the trial court that the NOPD did not want to give him the initial *740 police report and-that all he was asking for in this mandamus action was his "Initial Police Report,” which would show him “what Officer or Officer(s) interviewed and investigated the victim Gerald Scott, and witness Ms. Dionne Scott, on the scene of the crime.”[5]
On July 22, 2016, the trial court set a second status conference. This conference was held on August 4, 2016; and Mr. Lewis again was allowed to participate by phone. The only defendant that participated in this conference was the ODA.[6] On September 27, 2016, the trial court, referencing the August 4, 2016 conference, rendered the following judgment:
This court previously ruled on Petitioner’s motion,[7] but held the subsequent conference on August 4, 2016 and reiterated the following:
IT IS ORDERED, ADJUDGED, AND DECREED that the Petitioner’s Petition for Writ of Mandamus is MOOT. The Defendants have provided the complete record request to the Petitioner, and therefore, his request has been satisfied.
This appeal followed.[8]
DISCUSSION
|fiThe gist of Mr. Lewis’ contentions on appeal is that the trial court erred in dismissing his mandamus action.[9] An appellate court reviews a trial court’s judgment denying a writ of mandamus under an abuse of discretion standard. Hatcher v. Rouse, 16-0666, p. 3, n. 2 (La.App. 4 Cir. 2/1/17), 211 So.3d 431, 2017 WL 431780 at *1 (quoting Constr. Diva, L.L.C. v. New Orleans Aviation Bd., 16-0566, p. 13 (La. App. 4 Cir. 12/14/16), 206 So.3d 1029, 1037). Additionally, this Court has noted the following:
“A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law ... to compel the delivery of the papers and effects of the office to his successor.” La. C.C.P. Art. 3863. A writ of mandamus is “an extraordinary remedy, to be applied where ordinary means fail to afford adequate relief.” Hoag v. State, 04-0857, p. 6 (La. 12/01/04), 889 So.2d 1019, 1023. The remedy “must be used sparingly ... to compel action that is clearly provided by law.” Hamp’s Const., L.L.C. v. Hous. Auth. of New *741 Orleans, 10-0816, pp. 3-4 (La.App. 4 Cir. 12/01/10), 52 So.3d 970, 973, quoting Allen v. St. Tammany Parish Police Jury, 96-0938, p. 4 (La.App. 1 Cir. 2/14/97), 690 So.2d 150, 153. “Mandamus will not lie in matters in which discretion and evaluation of evidence must be exercised.” Hamp’s, 10-0816, p. 4, 52 So.3d at 973. “The remedy is not available to command the performance of an act that contains any element of discretion, however slight.” Id.
A.M.E. Disaster Recovery Servs., Inc. v. City of New Orleans, 10-1755 at p. 8 (La. App. 4 Cir. 8/24/11), 72 So.3d 454, 459; see also Humane Society of New Orleans v. Landrieu, 13-1059, p. 3 (La.App. 4 Cir. 2/26/14), 135 So.3d 1195, 1197 (quoting A.M.E. Disaster Recovery Servs., supra); see also La. C.C.P. Art. 3861 (defining mandamus as “a writ directing a public officer or a corporation or an officer thereof to perform any of the duties set forth in Articles 3863 and 3864.”).
“That a writ of mandamus is the proper procedural means by which to require a public officer to produce public records (unless an exception applies) is evident both from the Public Records Law and case law.” Hatcher, 16-0666 at 211 So.3d 431, 2017 WL 431780 at *2; Vandenweghe v. Parish of Jefferson, 11-52, pp. 12-13 (La.App. 5 Cir. 5/24/11), 70 So.3d 51, 59 (noting that “mandamus, which under the Public Records Law, has a specific procedure in place to determine the nature of the requested items, is an appropriate remedy for ordering the release of public records.”). Indeed, the Public Records Law contains its own mandamus remedy, which is set forth in La. R.S. 44:35 A. This statute expressly provides for the use of a writ of mandamus to compel compliance with the public Records Law; it states:
Any person who has been denied the right to inspect, copy, reproduce, or obtain a copy or reproduction of a record under the provisions of this Chapter, either by a determination of the custodian or by the passage of five days, exclusive of Saturdays, Sundays, and legal public holidays, from the date of his in-person, written, or electronic request without receiving a determination in writing by the custodian or an estimate of the time reasonably necessary for collection, segregation, redaction, examination, or review of a records request, may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, together with attorney fees, costs and damages as provided for by this Section, in the district court for the parish in which the office of the custodian is located.
La. R.S. 44:35 A.
A mandamus proceeding brought under the public records law is a civil action. Wells v. Criminal Dist. Court of Orleans Parish, 16-0181, p. 3 (La.App. 4 Cir. 8/24/16), 198 So.3d 283, 285 (citing Landis v. Moreau, 00-1157, p. 8 (La. |72/21/01), 779 So.2d 691, 696). Generally, “[a] mandamus action for production of a public record requires a contradictory hearing.” Lens v. Landrieu, 16-0639, p. 4 (La.App. 4 Cir. 12/14/16), 206 So.3d 1245, 1248 (citing Fussell v. Reed, 95-0398, p. 3 (La.App. 1 Cir. 11/9/95), 664 So.2d 1214, 1216). When, however, the requirements for invoking the mandamus remedy under La. R.S. 44:35 are not met, such a hearing has not been required. See Wallace v. Ware, 94-2204, pp. 5-6 (La.App. 1 Cir. 6/23/95), 657 So.2d 734, 737; Chapman v. Dist. Attorney, 05-0577, p. 4 (La.App. 1 Cir. 3/29/06), 934 So.2d 128, 130; Revere v. Taylor, 613 So.2d 738, 739 (La. App. 4th Cir. 1993) (holding that a contradictory hearing was not required when the document request failed to describe a specific public record in the custodian’s control and *742 reasoning that “it would have been a vain and useless waste of the trial court’s time to order a contradictory hearing for the custodian to show cause why he was refusing to produce records that he did not possess”); see also Frank L. Maraist, 1A LA. CIV. L. TREATISE, CIV. PROC.— SPECIAL PROCEED., § 1.5 (2016) (noting that “a judge may notice on his own motion that a petition fails to state a cause of action, and in such a case, requiring the issuance of the writ seems useless” and citing Baldone v. Terrebonne Parish Registrar of Voters, 15-1356 (La.App. 1 Cir. 9/21/15), 182 So.3d 1005).

Mandamus Remedy Requirements

The jurisprudence has identified the following multiple requirements for invoking the mandamus remedy under the Public Records Law, including the following six requirements.
First, a request must be made. As this court has noted, “La. R.S. 44:32(A) of the Louisiana Public Records Act provides that the custodian of records ‘shall present any public record to any person of the age of majority who so requests.’ ” Weils, 16-0181 at p. 7, 198 So.3d at 287 (emphasis in original). “Inherent in the public records law is the requirement that a person seeking public records actually make a request to the custodian of the records he seeks.” Id. Stated otherwise, the initial step is that “[a] request for access to a public record must be made to the custodian of the record. A written or electronically submitted request is necessary for subsequent legal action in the event the custodian denies the request.” Dianne M. Irvine, What is a Public Record?, 10 Around the Bar 9 (Feb. 2015).
Second, the requestor must be a “person.” The general rule set forth in La. R.S. 44:31 is that “any person of the age of majority” may make a public records request. By statute, certain individuals have been excluded from the definition of a “person” under the Public Records Law. La. R.S. 44:31.1.[10] Under this statutory exception, a “person,” for purposes of the Public Records Law, is defined to exclude an individual: “(1) who is a convicted felon; (2) who is in custody pursuant to the sentence for that felony; (3) who has exhausted his appellate remedies; and (4) who is not limiting the grounds for his request to those items to be used to file for post-conviction relief under La.C.Cr.P. Art. 930.3.” Muhammad v. Office of Dist. Attorney for Parish of St James, 16-9, p. 12 (La.App. 5 Cir. 4/27/16), 191 So.3d 1149, 1157.[11]
*743 Third, the request must be made to a “custodian.” The term “custodian” is defined to mean “the public official or head of any public body having custody or control of a public record, or a representative specifically authorized by him to respond to requests to inspect any such public records.” La. R.S. 44:1 A(3). The Public Records Law “confers upon the court jurisdiction to enjoin a specific entity: the custodian.” Vandenweghe, 11-52 at p. 5, 70 So.3d at 54.
Fourth, the document requested must be a “public record.” The term “public record” is broadly defined.[12] See La R.S. 44:1 A(2).[13] The document at issue here—an initial report—is defined, by statute, as a public record. La. R.S. 44:3 | t (/providing that “the initial report of the officer or officers investigating a complaint, but not to apply to any followup or subsequent report or investigation, ... shall be a public record.”); Cormier v. Public Records Request of Di Guilio, 553 So.2d 806, 807 (La. 1989) (noting that “[u]nder La.R.S. 44:3(A)(4)(a), these initial reports are public records, and the requesting party is thus entitled to copies of these reports.”).
Fifth, the document requested must exist. Courts have “refused to impose a duty on public bodies to ‘create’ documents not already in existence.” Jack M. Weiss and Mary Ellen Roy, OPEN GOVERNMENT GUIDE: OPEN RECORDS AND MEETINGS LAWS IN LOUISIANA, 16 (6th ed. 2011) (citing Nungesser v. Brown, 667 So.2d 1036, 1037 (La. 1996)).[14] Indeed, the enforcement provisions of La. R.S. 44:35 presuppose the existence of the records in the office of the custodian. Revere v. Taylor, 613 So.2d 738 (La. App. 4th Cir. 1993).
Sixth, and finally, there must be a failure by the custodian to respond to *744 the request. This requirement is implicit from the fact that it is a custodian’s failure to respond to a request for a public record that triggers the right to bring a mandamus action. Muhammad, 16-9, p. 10, 191 So.3d at 1156. Should the custodian refuse to allow access to the public records, the custodian must defend his action in a contradictory hearing. As noted earlier, however, such a contradictory hearing is unnecessary when the requirements for invoking the mandamus remedy under La. R.S. 44:35 A are not met.
Inin this case, the ODA contends that none of these requirements are met. Because we find three requirements are not met, we pretermit analyzing the other three—whether Mr. Lewis is a “person;”[15] whether one or more or all of the Defendants is the “custodian;”[16] and whether the document requested is a “public record.”[17] We thus focus our analysis on the other three requirements—whether Mr. Lewis made a “request;” whether the document requested exists; and whether the Defendants failed to respond.

A request

In his petition, Mr. Lewis failed to identify a particular request to which a particular defendant failed to respond. In his appellate brief, Mr. Lewis cites his requests in his 1998 criminal proceedings, including his defense counsel’s pre-trial discovery requests. Indeed, he contends that during his criminal proceedings he made “several requests for these specific public records.” This court, however, recently rejected this same argument in Wells, supra, reasoning as follows:
Wells alleges in his application for writ of mandamus that the appellees denied his request for certain public records. However, the record before us contains no evidence of a public records request made by Wells and served on the appellees or any other purported custodian of records. The record instead reflects that Wells filed numerous motions for production of documents, motions to enforce, and motions for contempt, all in his criminal case and under his criminal docket number, along with several corresponding writ applications to this Court and the Supreme Court relative to those |12rulings. We do not construe these criminal court filings as public records requests, and we have identified no other Louisiana court which has done so. A motion filed in a criminal proceeding is not the proper procedural vehicle to establish a right to records under the public records law.
Wells, 16-0181 at pp. 7-8, 198 So.3d at 287-88. Likewise, the record in this case contains no request for public records on which this mandamus action is based. As such, Mr. Lewis has not established this fact—that he made a request.
Moreover, as the ODA points out, the document setting forth a public records *745 request is necessary for the following two reasons: (i) to determine if Mr. Lewis is the one who made the request and thus has a right of action;[18] and (ii) to determine the scope of the request by identifying exactly what records were requested. Apparently, Mr. Lewis views his petition for mandamus as his civil public records request. Even assuming, arguendo, Mr. Lewis made such a request, there are two additional, interrelated problems with Mr. Lewis’ writ of mandamus. We address those two problems together.

An existing document and a failure to respond

In his Petition for a Writ of Mandamus, Mr. Lewis requested that the trial court order the Defendants to produce the “on the scene report of the incident” at his cost. In support of this request, Mr. Lewis cited Hilliard v. Litchfield, 01-1987 (La. App. 1 Cir. 6/21/02), 822 So.2d 743, in which the appellate court reversed the trial court and ordered the chief of police to produce the initial report of the officer or officers investigating the complaint.
| iaIt is undisputed, as noted earlier, that an “initial report” is a public record. The term “initial report,” however, is statutorily defined by La. R.S. 44:3 A(4)(b) to mean a document setting forth the following items:
• A narrative description of the alleged offense, including appropriate details thereof as determined by the law enforcement agency;
• The name and identification of each person charged with or arrested for the alleged offense;
• The time and date of the alleged offense;
• The location of the alleged offense;
• The property involved;
• The vehicles involved; and
• The names of investigating officers.
The police reports that the ODA has produced to Mr. Lewis contain all the above items required to be included in an “initial report.” La. R.S. 44:3. The jurisprudence has held that statements of “on the scene witnesses” are not included in the meaning of an “initial report.” State v. Meyers, 95-750, 96-35, 96-395, p. 18 (La. App. 5 Cir. 11/26/96), 683 So.2d 1378, 1387. Under R.S. La. 44:3 A(4), “such report only needed to contain those items listed in the statute [which] ... does not require that the initial report contain statements made at the scene by witnesses.” Meyers, 95-750 at pp. 19-20, 683 So.2d at 1387.
In this case, the trial court made a finding that the Defendants had provided Mr. Lewis with all the police report records that were available. Mr. Lewis’ contention is that there are additional “initial report(s).” This court addressed a similar contention recently in the Hatcher case. There, the plaintiff disputed the coroner’s response to his public records request that the coroner was unable to |14identify any records based on the information provided by the plaintiff. Finding the coroner adequately complied with the Louisiana Public Record Law, we reasoned as follows:
The custodian of public records cannot be expected to produce records that it cannot identify. To the contrary, the custodian’s statutory duty is “to provide immediate access to records that are available.” All. for Affordable Energy v. Frick, 96-1763, p. 7 (La.App. 4 Cir. 5/28/97), 695 So.2d 1126, 1132 (emphasis added). As Dr. Rouse was unable to identify records pertaining to Mr. *746 Hatcher’s request, we find no abuse of the trial court’s discretion in denying the request for a Writ and dismissing it. As the Louisiana Supreme Court once found, “[u]nder these circumstances [of this case], a mandamus would not serve a useful purpose and should not issue,” Reynolds v. Louisiana Highway Comm’n, 163 La. 125, 111 So. 622, 624 (La. 1927).
Hatcher, 16-0666 at 211 So.3d 431, 2017 WL 431780 at *5 (emphasis in original).
The same logic applies here. The Defendants cannot be expected to produce initial police reports that are unavailable or cannot be identified. The Defendants have produced .the initial police report and a supplemental report. Under these circumstances, the Defendants have complied with the Louisiana Public Records Law. The trial court thus did not abuse its discretion in dismissing Mr. Lewis’ mandamus action as moot.
As previously noted, to trigger the right to a mandamus remedy, there must be failure of a custodian to respond. No such failure was established to have occurred in this case. Moreover, since one or more of the six requirements we have identified for invoking the mandamus remedy under the Public Records Law are not met here, we find no error in the trial court’s failure to hold a contradictory hearing before dismissing this action as moot.
DECREE
11fiFor the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED

. See La. R.S. 44:1,1 (noting that the short title of this Chapter is “Public Records Law”).

. In this court's unpublished opinion on appeal, the factual background of the underlying crime is set forth as follows:
At 8:09 P.M. on September 5, 1997, the New Orleans Police Department 911 operator received a report that Gerald Scott had just been robbed at a Citgo gas station/convenience store at the corner of Chef Menteur Highway and Dale Street....
After an initial report was completed by a patrol officer, the case was assigned to Detective David Patrolia for further investigation. He testified that he spoke to the reporting officer sometime after 10:00 p.m. ...

. The attachments to his petition included correspondence dated February 21, 2011, directed to the NOPD requesting, among other things, the initial incident report. As the ODA points out, the record is void of the date of the original public record request to the ODA; nor did Mr. Lewis attach the original public records request to his petition or subsequent filings.

. The gap in activity in the mandamus action, as the ODA points out, was apparently due to Mr. Lewis' difficulty in perfecting his motion to proceed in forma pauperis on the Petition for Writ of Mandamus. In 2015, Mr. Lewis filed a second in forma pauperis affidavit. On September 25, 2015, the trial court granted Mr. Lewis' Pauper Order, allowing him to proceed in forma pauperis in this case. The Petition for Mandamus—which was originally filed on April 27, 2011—was served on the Defendants—one defendant was served on January 29, 2016; the other two defendants were served on February 11, 2016.

. The record also contains other public record requests by Mr. Lewis to the Defendants, including a request for the 911 audio recording tape. Mr. Lewis, however, does not raise any issue regarding those other requests on this appeal. The only item Mr. Lewis raises is the initial police report.

. As the ODA points out, it is the only defendant who made an appearance in this matter in the trial court. Likewise, it is the only defendant who filed a brief in response to this appeal.

. The record contains no previous ruling by the trial court.

. Mr. Lewis’ motion for appeal was filed before the trial court rendered its written reasons for judgment.

.In his notice of intent to appeal, Mr. Lewis asserts that he is "unsatisfied” with the proceedings. In his appellate brief,. Mr. Lewis asserts the following two assignments of error:
• His constitutional right to due process was violated when the Defendants failed to comply with the Public Records Act pursuant to La. R.S. 44:1, ef seq.
• The reason the ODA misled the CDC Judge Kern A. Reese by sending him the wrong police reports is because the NOPD and the ODA is [sic] in collusion not to give appellant or any court house the police reports appellant is [sic] requesting because they are well aware that the contents of the requested police reports can and will prove appellant's actual innocence without a reasonable doubt.

. La. R.S. 44:31.1 provides as follows:
' For the purposes of this Chapter, person does not include an individual in custody after sentence following a felony conviction who has exhausted His appellate remedies when the request for public records is not limited to grounds upon which the individual could file for post conviction relief under Code of Criminal Procedure Article 930.3, Notwithstanding the provisions contained in R.S. 44:32, the custodian may make an inquiry of any individual who applies for a public record to determine if such individual is in custody after sentence following a felony conviction who has exhausted his appellate remedies and the custodian may make any inquiry necessary to determine if the request of any such individual in custody for a felony conviction is limited to grounds upon which such individual may file for post conviction relief under Code of Criminal Procedure Article 930.3.

. The jurisprudence, however, has recognized that the lapse of the time period for post-conviction relief, alone, is not a bar to obtaining public records. See McGraw v. Richland Parish Clerk of Court, 42,029, pp. 7-8 (La.App. 2 Cir. 4/11/07), 954 So.2d 912, 916 (noting that "[¡Inmates are rightfully entitled to obtain copies of records related to their convictions, even after the time period for filing for post-conviction relief has passed” *743 and cautioning that "the law does not sanction abuse of the procedure for obtaining such records by allowing repetitive requests for records that have already been provided.”).

. This is consistent with the principle that the right of access to public records is a fundamental right guaranteed by La. Const. Art. XII, § 3. See Johnson v. Stalder, 97-0584, p. 3 (La.App. 1 Cir. 12/22/98), 754 So.2d 246, 248. Because it is a fundamental right, the jurisprudence has held that "[a]ny request for a public record must be analyzed liberally in favor of free and unrestricted access to the record.” Title Research Corp. v. Rausch, 450 So.2d 933, 937 (La. 1984). "The burden is on the party seeking to prevent disclosure to prove that withholding of a public record is justified.” Stalder, 97-0584, at pp. 3-4, 754 So.2d at 248.

. La. R.S. 44:1 A(2)(a) defines a "public record” as follows:
All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are “public records”, except as otherwise provided in this Chapter or the Constitution of Louisiana.

.In Nungesser, the Supreme Court reversed the appellate court’s decision requiring the Commissioner of Insurance to provide data that did not exist in the specified form. The Supreme Court reasoned that the Commissioner "was not required to produce a list which did not exist and properly refused Nun-gesser’s request.” 667 So.2d at 1037

. The ODA contends that Mr. Lewis lacks a right of action to request records relating to his prosecution. Citing La. R.S. 44:31.1, the ODA contends that Mr. Lewis is not a "person” entitled to access the public records he requested. According to the ODA, "Lewis is a convicted and sentenced felon who has exhausted his appellate remedies and therefore is not a ‘person’ under the Louisiana Public Records Law.”

. The ODA contends that it is not the custodian of records for the police reports Mr. Lewis requested; rather, the NOPD is the custodian.

.The ODA contends that it is unclear exactly what documents Mr. Lewis is requesting. The ODA notes that Mr. Lewis fails to identify whether the requested records are actual police reports or handwritten notes of the NOPD officer at the crime scene, and this distinction is important because La. R.S. 44:3 D provides an exemption for certain handwritten notes.

. The jurisprudence has imposed another limitation; only the person who actually made the request can bring an action to enforce it. Vourvoulias v. Movassaghi, 04-0262 (La.App. 1 Cir. 2/11/05), 906 So.2d 461.