| LAURA BIXBY | * | NO. 2019-CA-0477 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| COLLIN ARNOLD | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-01916, DIVISION "N-8"
Honorable Ethel Simms Julien, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *
(Court composed of Judge Terri F. Love, Judge Rosemary Ledet, Judge Dale N. Atkins)

LOVE, J., DISSENTS WITH REASONS TO FOLLOW

Bruce Hamilton
Katie Schwartzmann
ACLU FOUNDATION OF LOUISIANA
P.O. BOX 56157
New Orleans, LA 70156

Jamila Johnson
Liyah Brown
Conor Gaffney
SOUTHERN POVERTY LAW CENTER
201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170

COUNSEL FOR PLAINTIFF/APPELLEE

Isaka R. Williams
ASSISTANT CITY ATTORNEY
Megan A. Haynes
ASSISTANT CITY ATTORNEY
Corwin St. Raymond
DEPUTY CITY ATTORNEY
Churita H. Hansell
CHIEF DEPUTY CITY ATTORNEY
Donesia D. Turner
SENIOR CHIEF DEPUTY CITY ATTORNEY

Sunni J. LeBeouf
CITY ATTORNEY
1300 Perdido Street, Room 5E03
New Orleans, LA 70112

COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**
**DECEMBER 5, 2019**

This is a mandamus action seeking to obtain documents and maps pursuant to the Louisiana Public Records Law, La. R.S. 44:1, *et. seq.*[1] Appellee, Laura Bixby ("Ms. Bixby"), filed a Petition for Writ of Mandamus naming as defendant, Appellant, Collin Arnold ("Mr. Arnold"), in his official capacity as custodian of records for New Orleans Department of Homeland Security and Emergency Preparedness ("NOHSEP"), seeking any map or maps which the City of New Orleans (the "City") maintains showing the locations of four hundred (400) publicly visible crime cameras, any policies governing the records keeping of the locations of the cameras, and records or policies regarding the staff employed by the Real Time Crime Center ("RTCC"). Additionally, Ms. Bixby sought attorney's fees and costs. The trial court granted Ms. Bixby's request for a writ of mandamus and ordered the release of the requested maps. Ms. Bixby, the prevailing party, was awarded, by the trial court, attorney's fees and reasonable costs as required by the Public Records Law. For the following reasons, we affirm.

---

[1] *See* La. R.S. 44:1.1 (noting that the short title of this Chapter is the "Public Records Law").

1

**FACTS AND PROCEDURAL HISTORY**

On August 9, 2018, Ms. Bixby, a resident of New Orleans and a staff attorney for the Orleans Public Defenders, made a formal public records request to NOHSEP requesting production of the following records:

> (1) Any maps or maps which the City maintains showing the location of all PUBLICLY VISIBLE (in other words, red and blue lights and the NOPD logo) real time crime cameras, not including traffic/red light/school zone cameras, at the present date;
>
> (2) Any policies governing the keeping of records of locations of such cameras of past dates; and
>
> (3) Records or policies regarding the number and type of staff employed at the Real Time Crime Center.

On August 14, 2018, the New Orleans City Attorney's Office (the "City Attorney's Office") responded on behalf of Mr. Arnold and NOHSEP. The City Attorney's Office denied Ms. Bixby's first and second requests. However, it provided records responsive to her third request. In denying Ms. Bixby's first request, the City Attorney's Office responded as follows:

> Records responsive to your first request regarding the location of the City's crime cameras are exempt from disclosure under the Public Records Law because they are records regarding investigative technical equipment and physical security information created in the prevention of terrorist-related activity.

The City Attorney's Office cited La. R.S. 44:3(A)(3) as the statutory basis for the claimed exemption.

As to the denial of Ms. Bixby's second request, the City Attorney's Office responded that:

2

> The Office of Homeland Security and Emergency Preparedness does not have records responsive to your second request regarding policies governing keeping records of locations of cameras.

In response to the City Attorney's Office partial denial of her public records request, Ms. Bixby filed, on February 20, 2019, a Petition for Writ of Mandamus pursuant to the Louisiana Public Records Law (the "Petition") requesting that Mr. Arnold produce the maps sought in the first request or be ordered to appear to show cause why he should not be "ordered to do so." Ms. Bixby also requested an award for attorney's fees and costs as the prevailing party pursuant to La. R.S. 44:35(A). Mr. Arnold, on March 6, 2019, filed an exception of no cause of action stating that the responsive "public" documents were produced and provided to Ms. Bixby. Further, Mr. Arnold responded he "did not refuse to perform his duties as custodian of the records for [NOHSEP];" therefore, Ms. Bixby was not entitled to attorney's fees or costs because he did not act arbitrarily or capriciously in response to her public records request.

The matter came for a contradictory hearing before the trial court on March 14, 2019.[2] Before the hearing commenced, the trial court ordered the parties to submit post-hearing memoranda on the issues presented at the hearing. On May 3, 2019, the trial court rendered its judgment in which it:

    (1)    Granted Ms. Bixby's Writ of Mandamus; and

    (2)    Awarded Ms. Bixby attorney's fees and costs.

---

[2] The original hearing date on the Petition was scheduled for February 28, 2019. However, the record reflects that Mr. Arnold was not served with the Petition until February 27, 2019. On Mr. Arnold's motion, the trial court granted a continuance and set the hearing for March 14, 2019.

The trial court also ordered Mr. Arnold to produce the following public records:

> Any map or maps which the City maintains showing the location of all publicly visible real time cameras, not including traffic/red light/school zone cameras, at present date.

It is from this judgment that Mr. Arnold appeals.

## DISCUSSION AND ANALYSIS

Mr. Arnold argues that the trial court erred in granting the writ of mandamus because the records sought are exempt from disclosure. Mr. Arnold also claims the trial court erred in ruling that NOHSEP is not an intelligence agency. Further, Mr. Arnold argues that the trial court erred in mandating the production of the maps because disclosure of the requested maps is unduly burdensome and overly broad. Lastly, Mr. Arnold claims the trial court erred in granting attorney's fees and costs to Ms. Bixby.

### *Overview of the Public Records Law*

We begin our discussion with an overview of the Public Records Law. "The right of access to public records is fundamental." *Elliot v. Taylor*, 614 So.2d 126, 128 (La. App. 4th Cir. 1993). Louisiana Constitution Article XII, § 3 provides that:

> No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law.

The Louisiana legislature has codified this right in the Public Records Act, La. R.S. 44:1, *et. seq.* Specifically, La. R.S. 44:1(A)(2)(a) defines a "public record" as follows:

> All books, records, writings, accounts, letters and letter books, **maps**, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics,

4

including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, **are "public records"**, except as otherwise provided in this Chapter or the Constitution of Louisiana.

(Emphasis added).

The right of access to public records is a fundamental right guaranteed by the Louisiana Constitution Art. XII, § 3. Because it is a fundamental right, the jurisprudence has held that any request for a public record "must be construed liberally in favor of free and unrestricted access to the records, and that access can be denied only when the law, specifically and unequivocally, provides otherwise." *Title Research Corp. v. Rausch*, 450 So.2d 933, 936 (La. 1984). Further, "[w]henever there is doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public's right to see." *Id.* "The burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian." La. R.S. 44:31(B)(3).

"Generally, an appellate court reviews a trial court's judgment on a writ of mandamus under an abuse of discretion standard." *Commodore v. City of New Orleans*, 2019-0127, p. 9 (La. App. 4 Cir. 6/20/19), 275 So.3d 457, 465 (citing *Lewis v. Morrell*, 2016-1055, p. 5 (La. App. 4 Cir. 4/5/17), 215 So.3d 737, 740). "Also, a trial court's findings of fact in a mandamus proceeding are subject to a manifest error standard of review." *Id.* (citing *St. Bernard Port, Harbor & Terminal Dist. v. Guy Hopkins Constr. Co.*, 2016-0907, p. 4 (La. App. 4 Cir.

5

4/5/17), 220 So.3d 6, 10). "However, questions of law, such as the proper interpretation of a statute, are reviewed by appellate courts under the *de novo* standard of review, and the appellate court is not required to give deference to the lower court in interpreting a statute." *Id.*, 2019-0127, p. 9, 275 So.3d at 465-66 (citing *Carver v. Louisiana Dep't of Pub. Safety*, 2017-1340, p. 4 (La. 1/30/18), 239 So.3d 226, 230; *St. Bernard Port, Harbor & Terminal Dist.*, 2016-0907, p. 4, 220 So.3d at 10).

Ms. Bixby filed a public records request seeking "any maps or maps which the City maintains showing the location of all PUBLICLY VISIBLE…real time crime cameras." The record reflects that, in 2017, NOHSEP established the RTCC which currently has four hundred (400) cameras placed in various neighborhoods across the metropolitan area of New Orleans. The cameras are located in areas that have been identified as target crime areas. Accordingly, Ms. Bixby filed a public records request to NOHSEP requesting production of the maps showing the location of these cameras.

La. R.S. 44:1(A)(2)(a) establishes that "all" maps maintained "under the authority of constitution and laws of this state" are public records. As stated, the record reflects that the real time cameras are maintained by NOHSEP, a parish office established to be responsible for the homeland security and emergency preparedness for Orleans Parish. *See* La. R.S. 29:729. Further, Mr. Arnold, the custodian of the records for NOHSEP, does not dispute that the requested maps are public records as defined by La. R.S. 44:1(A)(2)(a). Thus, we find the maps the trial court ordered for production by Mr. Arnold are public records pursuant to La. R.S. 44:1(A)(2)(a).

6

### Issues Number 1 and 2 - La. R.S. 44:3(A)(3) Exemption of Records of Investigative Agencies

Now, we address the central issues of Mr. Arnold's argument. He argues that NOHSEP is an intelligence agency pursuant to La. R.S. 44:3(A) and that the map or maps are exempt from disclosure pursuant to La. R.S. 44:3(A)(3).

La. R.S. 44:3(A) provides that:

> Nothing in this Chapter shall be construed to require disclosures of records, or the information contained therein, held by the offices of the attorney general, district attorneys, sheriffs, police departments, Department of Public Safety and Corrections, marshals, investigators, public health investigators, correctional agencies, communications districts, **intelligence agencies**, Council on Peace Officer Standards and Training, Louisiana Commission on Law Enforcement and Administration of Criminal Justice, or publicly owned water districts of the state…

(Emphasis added).

Not all records of the entities enumerated in La. R.S. 44:3(A) are exempt. Only the records containing specific information, as defined in La. R.S. 44:3(A)(3), are exempt.

La. R.S. 44:3(A)(3) provides that:

> Records containing security procedures, investigative training information or aids, investigative techniques, investigative technical equipment or instructions on the use thereof, criminal intelligence information pertaining to terrorist-related activity, or threat or vulnerability assessments collected or obtained in the prevention of terrorist-related activity, including but not limited to physical security information, proprietary information, operational plans, and the analysis of such information, or internal security information…

Thus, to claim the public records exemption, Mr. Arnold must prove (1) that NOHSEP is an intelligence agency pursuant to La. R.S. 44:3(A); and (2) that the

maps contain the type of information exempt from disclosure pursuant to La. R.S. 44:3(A)(3).

Mr. Arnold argues that NOHSEP is an intelligence agency which functions as an investigatory agency for several departments in the City, including the New Orleans Police Department ("NOPD"). He asserts that NOHSEP's mission and job responsibilities illustrate that it serves these departments as an intelligence agency. Therefore, Mr. Arnold maintains that NOHSEP qualifies as an intelligence agency pursuant to La. R.S. 44:3(A) and has a right to assert the statutory exemption.

Ms. Bixby counters that NOHSEP is not an intelligence agency. She argues that NOHSEP is an office whose mission is "emergency planning" and "preparedness." Further, she argues that the specific government entities listed in La. R.S. 44:3(A) primarily function as law enforcement or criminal investigation entities. Moreover, Ms. Bixby contends that the context of "intelligence agency," as listed in the La. R.S. 44:3(A), should be interpreted synonymously with "police department," or "investigator," or "attorney general." Lastly, Ms. Bixby contends NOHSEP does not have any law enforcement or criminal investigation functions and does not serve as an investigatory agency.

"The privileges granted under La. R.S. 44:3(A) have been strictly construed." *Skamangas v. Stockton*, 37,996, p. 7 (La. App. 2 Cir. 3/5/04), 867 So.2d 1009, 1014. As such, to determine if NOHSEP is an intelligence agency, we must examine the term "intelligence agency" as listed in La. R.S. 44:3(A). "Intelligence agency" is not explicitly defined in the statute. "Where the statute does not define a term, we assume that it retains its common meaning." *Larson v. XYZ Ins. Co.*, 2015-0704, p. 12 (La. App. 4 Cir. 3/23/16), 192 So.3d 181, 188 (citing *Vogt v. Board of Levee Com'rs of Orleans Levee Dist.*, 1995-1187, p. 10

(La. App. 4 Cir. 9/4/96), 680 So.2d 149, 155). <u>Merriam-Webster's Collegiate Dictionary</u>, (11th ed., 2003) defines "intelligence," in pertinent part, as "…**b:** information concerning an enemy or possible enemy or an area; *also*: an agency engaged in obtaining such information…" (Emphasis in original). Further, <u>Merriam-Webster's Collegiate Dictionary</u>, (11th ed., 2003) defines "agency," in pertinent part, as "…**5:** an administrative division (as of a government)…" (Emphasis in original). Pursuant to <u>Merriam-Webster's Collegiate Dictionary's</u> definition of "agency," NOHSEP is an "agency" as it is a governmental department within the City. However, pursuant to <u>Merriam-Webster's Collegiate Dictionary</u>, "intelligence," as it relates to an agency, requires one that is engaged in collecting information concerning "an enemy or possible enemy or an area."

In support of his argument that NOHSEP is an intelligence agency, Mr. Arnold cites La. R.S. 29:729, which codifies the functions of NOHSEP. Specifically, Mr. Arnold cites La. R.S. 29:729(B)(6), which provides:

> B. The parish office of homeland security and emergency preparedness shall prepare and maintain an all hazards emergency operations plan and keep it current, which plan may include any of the following:
>
> ***
>
> (6) Assistance to local officials in designing local homeland security and emergency action plans.

Relying on La. R.S. 29:729(B)(6), Mr. Arnold argues that NOHSEP has a "nexus" with NOPD, explaining that the cameras supplied by RTCC, which it operates, allow technicians to provide NOPD personnel with live updates regarding occurrences on the scene of a crime. Mr. Arnold also argues that RTCC similarly aids in the prevention of terrorism. Thus, he asserts that these functions demonstrate that NOHSEP is an intelligence agency. We disagree.

9

La. R.S. 29:729 addresses the duties and functions of NOHSEP. Specifically, La. R.S. 29:729(A) provides that "[t]he parish office of homeland security and emergency preparedness…shall be responsible for homeland security and emergency preparedness in the parish…" La. R.S. 29:729 does not establish that NOHSEP shall be responsible for intelligence, or intelligence gathering on behalf of New Orleans, or investigatory duties. Further, Mr. Arnold claims NOHSEP is a "subsidiary of sorts" of the federal Department of Homeland Security, which means that NOHSEP is an intelligence agency. This argument is without merit. The federal Department of Homeland Security is not itself an intelligence agency. The Office of Intelligence and Analysis, within the Department of Homeland Security, is an intelligence agency. In addition to the Office of Intelligence and Analysis, there are sixteen (16) state agencies considered part of the intelligence community.[3] NOHSEP has several components: none of these components are focused on intelligence gathering.[4]

The trial court did not find that NOHSEP is an investigatory entity or law enforcement agency, nor did it find that it established that the publicly-visible cameras aid in the prevention of terrorism. Likewise, the record does not reflect that Mr. Arnold sufficiently presented evidence that NOHSEP is an investigatory agency.

---

[3] The other agencies include the Office of the Director of National Intelligence, the Defense Intelligence Agency, the State Department Bureau of Intelligence and Research, the Homeland Security Department's Office of Intelligence and Analysis, the Drug Enforcement Administration's Office of National Security Intelligence, the Treasury Department's Office of Intelligence and Analysis, the Energy Department's Office of Intelligence and Counterintelligence, the National Geospatial-Intelligence Agency, the National Reconnaissance Office; Air Force Intelligence, Surveillance and Reconnaissance; Army Military Intelligence; Office of Naval Intelligence; Marine Corps Intelligence; and Coast Guard Intelligence. Nina Agrawal, *There's More Than the CIA and FBI: The 17 Agencies That Make Up the Intelligence Community*, L.A. Times (Jan. 17, 2017), https://www.latimes.com/nation/la-na-17-intelligence-agencies-20170112- story.html.

[4] *See* Homeland Security - City of New Orleans, https://www.nola.gov/homeland- security.

Additionally, Mr. Arnold contends that RTCC, which NOHSEP operates, is an intelligence agency because RTCC utilizes investigatory equipment. The public website, for RTCC, provides that it "…leverages technology to provide critical information to first responders in the field and to **assist** with investigations of criminal activity or quality of life concerns."[5] (Emphasis added). Based upon this description of RTCC, it is an aid to NOPD and other emergency departments in the City, not an intelligence agency engaged in the collection of intelligence information of "an enemy." The record shows that NOHSEP is not an intelligence agency, nor does it have any investigatory or law enforcement functions. Additionally, Mr. Arnold did not prove that RTCC is an investigatory agency and that the publicly-visible cameras aid in the prevention of terrorism.

Therefore, the trial court did not err in finding that NOHSEP was not an intelligence agency. Consequently, pursuant to La. R.S. 44:3(A)(3), NOHSEP cannot assert the disclosure exemption as it relates to the map or maps. Thus, we further find the trial court did not err in ordering the production of the map or maps requested by Ms. Bixby.

**_Issue Number 3- Writ of Mandamus_**

Having determined that the maps requested by Ms. Bixby are public records and are not exempt, this Court now addresses the use of a mandamus proceeding to compel production of the maps.

La. C.C.P. art. 3863 provides:

> A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law, or to a former officer or his heirs to compel the delivery of the papers and effects of the office to his successor.

---

[5] *See* https://www.nola.gov/homeland-security/real-time-crime-center/.

"That a writ of mandamus is the proper procedural means by which to require a public officer to produce public records (unless an exception applies) is evident both from the Public Records Law and case law." *Hatcher v. Rouse*, 2016-0666, p. 6 (La. App. 4 Cir. 2/1/17), 211 So.3d 431, 434. The Public Records Law provides for its own mandamus remedy as set forth in La. R.S. 44:35(A), which provides:

> Any person who has been denied the right to inspect, copy, reproduce, or obtain a copy or reproduction of a record under the provisions of this Chapter, either by a determination of the custodian or by the passage of five days, exclusive of Saturdays, Sundays, and legal public holidays, from the date of his in-person, written, or electronic request without receiving a determination in writing by the custodian or an estimate of the time reasonably necessary for collection, segregation, redaction, examination, or review of a records request, **may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, together with attorney fees, costs and damages as provided for by this Section, in the district court for the parish in which the office of the custodian is located**.

(Emphasis added).

The jurisprudence establishes there are six requirements that must be met to invoke the mandamus remedy under the Public Records Law. *Lewis v. Morrell*, 2016-1055, p. 7 (La. App. 4 Cir. 4/5/17), 215 So.3d 737, 742.

The first requirement is that a request must be made. *Id.* La. R.S. 44:32(A) provides, in pertinent part, that, "[t]he custodian shall present any public record to any person of the age of majority *who so requests*." (Emphasis in original). "Inherent in the public records law is the requirement that a person seeking public records actually make a request to the custodian of the records he seeks…[T]he

12

initial step is that '[a] request for access to a public record must be made to the custodian of the record.'" *Lewis*, 2016-1055, p. 8, 215 So.3d at 742 (internal citation omitted). "A written or electronically submitted request is necessary for subsequent legal action in the event the custodian denies the request." *Id.* Ms. Bixby made a written public records request to Mr. Arnold seeking records in the custody of NOHSEP. The record reflects that Mr. Arnold is the custodian of the records for NOHSEP. Thus, the first requirement is satisfied.

The second requirement is the requestor must be a "person." *Lewis*, 2016-1055, p. 8, 215 So.3d at 742. La. R.S. 44:31 sets forth that "any person of the age of majority" can make a public records request. *Id.*; *See also* La. R.S. 44:31. The record does not reflect that Ms. Bixby is a juridical entity or a minor. Ms. Bixby is a person of the age of majority. The second requirement is satisfied.

The third requirement is that the request must be made to a "custodian." *Lewis*, 2016-1055, p. 9, 215 So.3d at 743. "Custodian" is defined as "the public official or head of any public body having custody or control of a public record, or a representative specifically authorized by him to respond to requests to inspect any such public records." *Id.* (citing La. R.S. 44:1A(3)). The record reflects that Mr. Arnold is the custodian of records for NOHSEP. The third requirement is satisfied.

The fourth element requires that the document must be a "public record." *Id.* "Public record" is a term that is broadly defined. *Id.* As discussed above, the maps at issue are public records as defined by La. R.S. 44:1(A)(2)(a). The fourth requirement is met.

The fifth requirement is that the document requested must exist. *Id.*, 2016-1055, p. 10, 257 So.3d at 743.

13

In response to the fifth requirement, Mr. Arnold invokes two arguments. First, he argues that the production of the maps is unduly burdensome and overly broad. Ms. Bixby's request is limited to the location of all publicly-visible real time cameras. The record shows that there are four hundred (400) locations. Ms. Bixby's request is not overly broad, nor has Mr. Arnold demonstrated it is unduly burdensome to produce the records.

Second, Mr. Arnold argues, for the first time on appeal, that the maps requested by Ms. Bixby do not exist. "An appellate court generally finds it inappropriate to consider an issue raised for the first time on appeal when that issue was not pled, urged, or addressed in the court below." *Crosby v. Sahuque Realty Company, Inc.*, 2017-0424, p. 7 (La. App. 4 Cir. 12/28/17), 234 So.3d 1190, 1196 (citing *Jones v. Dep't of Police*, 11-0571, p. 8 (La. App. 4 Cir. 8/24/11), 72 So.3d 467, 472). The record reflects that Mr. Arnold did not raise the issue as to whether or not the map or maps existed before the trial court. Thus, it is not appropriate for this Court to consider this issue. We find the fifth requirement is satisfied.

The sixth requirement is that the custodian must have failed to respond to the request. *Lewis*, 2016-1055, p. 10, 215 So.3d at 743. Mr. Arnold declined to produce the maps requested by Ms. Bixby in her public records request asserting that NOHSEP was an intelligence agency and that the requested records were exempt from disclosure pursuant to La. R.S. 44:3(A)(3). "Should the custodian refuse to allow access to the public records, the custodian must defend his action in a contradictory hearing." *Id.*, 2016-1055, p. 10, 215 So.3d at 744. A contradictory hearing was held in the trial court. At the close of the hearing, the trial court permitted the parties to file post-hearing memoranda. Thereafter, the trial court granted the writ of mandamus in favor of Ms. Bixby finding that NOHSEP was not

an intelligence agency as defined by La. R.S. 44:3(A). The trial court also determined that the requested map or maps were public records and ordered the production of the map or maps. Similarly, we find that NOHSEP is not an intelligence agency as defined by La. R.S. 44:3(A), nor does NOHSEP have the right to assert the exemption, pursuant to La. R.S. 44:3(A)(3) because the map or maps are public records. As such, Mr. Arnold has failed to respond to Ms. Bixby's request. Thus, the sixth requirement is satisfied. All requirements are met to invoke the mandamus remedy under the Public Records Law.

### *Issue Number 4- Granting of Attorney's Fees and Costs*

Lastly, Mr. Arnold argues that the trial court erred in awarding Ms. Bixby attorney's fees and costs. Pursuant to La. R.S. 44:35(A), a party that has been denied the right to inspect records pursuant to a public records request "**may institute proceedings for the issuance of a writ of mandamus … relief, together with attorney fees, costs …**" (Emphasis added). Regarding the granting of the request for attorney's fees and costs under the Public Records Law, La. R.S. 44:35(D)(1) provides:

> If a person seeking the right to inspect, copy, or reproduce a record or to receive or obtain a copy or reproduction of a public record prevails in such suit, he **shall** be awarded reasonable attorney fees and other costs of litigation. If such person prevails in part, the court may in its discretion award him reasonable attorney fees or an appropriate portion thereof.

(Emphasis added).

Ms. Bixby prevailed on her writ of mandamus. As the prevailing party, the trial court was mandated to award attorney's fees and costs to Ms. Bixby.

For these reasons, we find that the trial court did not err in granting Ms. Bixby's writ of mandamus and awarding Ms. Bixby attorney's fees and costs.

**DECREE**

For the foregoing reasons, we affirm the trial court's judgment of May 3, 2019, granting Ms. Bixby's writ of mandamus, ordering Mr. Arnold to produce the maps requested, and awarding Ms. Bixby attorney's fees and costs.

**AFFIRMED**